# State, *ex rel.* Gaston *v.* Black; *In Re* Tate; State, *ex rel.* Tate *v.* Fort.

## Mandamus and Quo Warranto.

### (Decided February 15, 1917.   74 South. 387.)

1. **District and Prosecuting Attorneys; Circuit Solicitor; Destruction of Office.**—The circuit solicitor, like the circuit judge, is a constitutional officer, and his office cannot be destroyed, nor an incumbent legislated out of it, except as the Constitution itself may authorize; but to require that a part only of his duties shall be performed and discharged by another officer, as the county solicitor, a statutory officer, does not directly or indirectly destroy his office.

2. **Courts; Judicial Circuit.**—Counties of certain populations, and containing property of certain assessed valuations, now—since the Constitution of 1901—may alone constitute a judicial circuit.

3. **District and Prosecuting Attorneys; Circuit Solicitor; Destruction of Office; Constitution.**—If the Legislature had attempted to confer upon the county solicitor of Jefferson county the exclusive right and duty to prosecute in the circuit court of Jefferson, the only county in the circuit, the attempt would have been violative of the Constitution, establishing the office of circuit solicitor.

4. **District and Prosecuting Attorneys; Circuit Solicitor; Destruction of Office; Constitution.**—Acts 1915, p. 823, section 10, providing that in circuits of one county, having more than three judges, and having a county solicitor elected by the qualified electors of the county, such solicitor shall be, until the first Monday after the second Tuesday in January, 1919, the chief prosecuting officer of the county, thus rendering the circuit solicitor his assistant, is not upnconstitutional as destroying the constitutional office of circuit solicitor of Jefferson county, its effect being merely to preserve a state of affairs, which had prevailed for several years, so long as the present terms of the two officers continue, while the Constitution does not prohibit the Legislature from creating another solicitor for the circuit.

5. **District and Prosecuting Attorneys; Circuit Solicitor.**—Under Const. 1901, section 167, providing that a solicitor for each judicial circuit or other territorial subdivision shall be elected by the qualified electors of those counties in such circuit or other territorial subdivision in which such solicitor prosecutes criminal cases, the circuit solicitor is not elected solicitor of

the circuit of that territorial jurisdiction, not being a judicial officer of the circuit court, nor elected as such, but a ministerial officer of the territory composing the circuit.

6. **District and Prosecuting Attorneys; County Solicitors.**—The county solicitor is not by the Constitution required to be solicitor for any particular court or courts in the county, but for the territorial subdivision known as the county, and the Legislature may assign him duties to perform in any or all of the special courts of the county in which solicitor's duties are to be performed, it being the office and function of statutes and not of the Constitution to prescribe the courts in which constitutional or statutory solicitors shall prosecute, and the rights, character, and nature of the office being purely ministerial, subject to the Legislature's direction and control.

7. **Constitutional Law; Personal and Property Rights; Rights of Office-holder.**—Neither the office of county solicitor nor the rights, duties, or powers pertaining thereto are property or personal rights secured to the incumbent by the Constitution.

8. **District and Prosecuting Attorneys; Circuit Solicitor; Appointment of Deputies; Statute.**—The last proviso in the General Solicitors' Bill (Acts 1915, p. 817), attempting to make the county solicitor first prosecutor in circuits of one county until 1919, does not nullify the preceding proviso authorizing the circuit solicitor to appoint assistants or deputy solicitors, the intent being only to except local laws of such a county as to county solicitors from repeal until January, 1919.

9. **Statutes; Suspension of Operation.**—The Legislature, by exception or proviso, may suspend the operation or going into effect of an entire act or of any portion until a future date, or until the happening of a future contingency, and there is no constitutional objection to a proviso or exception in a general statute fixing different dates in the future at which it shall become effective in the repeal of other laws, as by providing the repeal of one statute to take effect at a given date, and the repeal of another statute at another, or even by providing a repeal of the same statute to take effect at one date, and a part at another.

10. **District and Prosecuting Attorneys; Circuit Solicitor; Statutes.**—The proviso of Acts 1915, p. 823, section 10, that in circuits of one county having more than three judges, and having a county solicitor elected by the qualified electors, such solicitor, until 1919, shall be the chief prosecuting officer of the county, does not take away the rights of the circuit solicitor of Jefferson county under Code 1907, section 7781 et seq., to prosecute in the circuit court, it making him the assistant prosecutor to the county solicitor.

11. **District and Prosecuting Attorneys; County Solicitor; Statute.**—Under Acts 1915, p. 823, section 10, providing that in circuits of one county, having more than three judges, and having a county solicitor elected by the qualified electors of the county, such solicitor shall be, until the first Monday after the second Tuesday in January, 1919, the chief prosecuting officer of the county, the county solicitor of Jefferson county has all the right and power to appoint or obtain assistants and assistance which he lawfully had under the provisions of the local laws of the county in force when the bill was passed, September 25, 1915, and may continue to exercise such powers until 1919, and abolishing the courts in which he and his assistants had theretofore prosecuted criminal cases did not take away the powers and rights of his assistants, and did not abolish his office.

12. **District and Prosecuting Attorneys; Assistants to County Solicitor.**— Assistants appointed, in his discretion, by the county solicitor of Jefferson

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

county, constituting a- circuit by itself, are not officers of any kind, the law authorizing their appointment fixing no terms and no compensation, except such as may be agreed upon between them and the solicitor.

13. **District and Prosecuting Attorneys; Assistants to Circuit Solicitor; Statute.**—Assistants appointed by the circuit solicitor, under Acts 1915, p. 817, in a circuit of one county, are county officers.

Sayre, J., dissenting.

APPEAL from Jefferson Circuit Court.

Heard before Hon. H. A. SHARPE.

Proceedings by the State of Alabama on the relation of Zell Gaston against Hugo Black as Solicitor and on the relation of Joseph R. Tate as Solicitor against William E. Fort, Judge, for mandamus and quo warranto, wherein Joseph R. Tate as Solicitor of the tenth judicial circuit makes a motion. Affirmed on appeal and application for mandamus denied.

F. E. BLACKBURN, C. B. POWELL and MORRIS LOVEMAN for appellant, Gaston; RICHARD V. EVANS and JOSEPH R. TATE for appellant Tate. HUGO L. BLACK pro se and for appellee Fort.

PER CURIAM.—These three cases together present for decision these questions:

(1) Can the Legislature of this state provide two prosecuting attorneys, one for the judicial circuit and one for the county, where the circuit and county embrace the same territory—one a circuit solicitor, a constitutional officer, and the other a county solicitor, a statutory officer, but one expressly authorized by the Constitution?

(2) If so, can the Legislature make the county solicitor the chief prosecutor for the circuit and the county, in effect making the circuit solicitor an assistant to the county solicitor?

(3) If the Legislature can do both, has it in fact and in law done so as to the Tenth judicial circuit and Jefferson county, which embrace the same territory, and in which Joseph R. Tate is circuit solicitor and Hugo L. Black is county solicitor?

(4) Have both Black and Tate, as solicitors, the right and power to appoint deputies and assistants, the one, as is authorized in the act known as the General Solicitors' Bill (Acts 1915, p. 817), the other, under various local acts for Jefferson county, as was authorized by law at the date of the passage of the General Solicitors' Bill (September 25, 1915)?

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

All of the first three of the above questions were answered in the affirmative by the trial court. It is contended by the circuit solicitor, Tate, that, his office being a constitutional office, the Legislature cannot destroy it, nor legislate him out of the duties and powers to be exercised by such officer; and that to provide that a county solicitor, a statutory officer, shall be the chief prosecuting officer in his circuit, is to indirectly destroy the constitutional office and substitute a statutory one therefor.

(1) There is no doubt, of course, that the circuit solicitor, like the circuit judge, is a constitutional officer, and that the office cannot be destroyed, nor an incumbent legislated out of it, except as the Constitution itself may authorize; but to require that a part only of the duties which would otherwise be discharged by him shall be performed and discharged by another officer or solicitor, does not directly or indirectly destroy his office. Such was expressly held in *Lusk's Case*, 82 Ala. 519, 2 South. 140. In that case it was held to be perfectly competent for the Legislature to add to, or to take from, circuits, any number of counties within the constitutional limits (which were then different from present limitations), and thus abate the duties of the solicitor as to one or more counties, and transfer them to other solicitors; that the Legislature could, within its discretion, provide for county solicitors whenever and wherever desired; that the Constitution did not fix or attempt to fix the duties of either circuit or county solicitors; that the Legislature could fix the duties of both, and transfer the duties of the one to the other, as it might desire, and increase or diminish the duties of the one or the other, as it might deem best, except so far as the Constitution might by clear and undoubted implication prohibit, as there was no express prohibition against it. It was there expressly held that the duties of a county solicitor were not, by the Constitution, confined to other courts than the circuit courts, and that the Legislature could impose upon one such the duties of prosecuting officer in the circuit court of the county for which he was appointed, and take those duties as to one county only entirely away from the circuit solicitor. It was also decided in that case that the proviso in the Constitution authorizing the Legislature to provide county solicitors was to authorize such solicitors to prosecute in the circuit courts, for the reason that the county solicitor or county prosecuting officer had, before the proviso in the Constitution appeared, been authorized to

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

prosecute in county and other inferior courts; so that its only effect was to authorize the county solicitor, when provided, to prosecute in the circuit court, as well as in the county court. The part of the opinion in the *Lusk Case* claimed by appellants to support their contention is as follows: "The power given the General Assembly to establish the system of 'county solicitors,' in connection with that of 'circuit solicitors,' was intended to be exercised within the discretion of that body, subject, it may be, to the limitation of section 4 of article 6, that 'no circuit shall contain less than three, nor more than twelve counties.' Until the counties of the circuit, in which the circuit solicitor is expressly permitted to discharge his customary and characteristic duties, are reduced below the number of three, there would seem to be no grievance of which he can justly complain. The power to take one or more counties from his circuit may be admitted, without leading to the conclusion that this power may be abused by indirectly abolishing the entire circuit. The Constitution, as we have shown, forbids this in clear and unmistakable language. It follows, further, from the foregoing views, that the lawmaking power may define the duties of these two classes of solicitors, by increasing or diminishing them, or by transferring the duties of the one to the other in any judicial tribunal," etc.—82 Ala. 525, 526, 2 South. 140, 144.

(2) The discretionary limitations upon the size of a circuit —the number of counties it might, and the number it should not, contain—were changed by the Constitution of 1901, and it is now allowable for counties of certain populations, and containing property of certain assessed valuations, to alone constitute a judicial circuit. Such a county is Jefferson, constituting the Tenth judicial circuit, of which Tate is the solicitor. As the county solicitor of Jefferson is attempted to be made the chief prosecuting officer in the circuit court of that county, it is claimed that the limitation fixed or made in the *Lusk Case* is exceeded, and that the attempt is therefore abortive.

(3) If the Legislature had attempted to confer upon the county solicitor the exclusive right and duty to prosecute in the circuit court of Jefferson (the only county in the circuit), as the statute did in the *Lusk Case* as to DeKalb county, then we would agree to appellants' contention, that the attempt would fail, because it would then be clearly and undoubtedly within the implied inhibition of the Constitution.

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. **Fort.**]

(4) The statutes under review in this case do not, as we construe them, attempt to do this, or what was done as to DeKalb county in the *Lusk Case;* it being provided and intended that both the circuit and the county solicitor shall prosecute in the circuit court of Jefferson county. Merely providing that one or the other of the two solicitors shall be the chief prosecutor in that court or in that county does not necessarily mean that the other shall not prosecute or have any duties to perform or powers to exercise in criminal or civil prosecutions in that court. There is no express provision prohibiting the circuit solicitor from performing any duties as to prosecutions in that circuit or county: and—as we construe this statute in connection with the general provisions in the local statutes as to Jefferson county and the Tenth judicial circuit, and in connection with the general provisions in the Code defining the duties of circuit, county, or other solicitors, together with the constitutional provisions applicable to circuit and county solicitors—both solicitors are charged with duties to be performed and clothed with the powers to be exercised, as to prosecutions in the circuit court of the county of Jefferson.

The fact that the act, or the proviso of the act, in question (section 10, Acts 1915, pp. 718, 823) provides that the county solicitor shall be the "chief prosecuting officer of the county," necessarily implies that there are other solicitors; and it does not deny to such other solicitors all right, or relieve them of all duty, to prosecute in the circuit or county of Jefferson. If the act said in terms that the circuit solicitor should assist the county solicitor in prosecutions in the circuit or in the county, it unquestionably would not have been unconstitutional or objectionable. Such was, and had been, the effect of the provisions of the local statutes for Jefferson county for a number of years prior to the passage of the statute in question. It is true that the local statutes did not require the circuit solicitor to assist the county solicitor in prosecutions in the circuit court for Jefferson county, but in the criminal and possibly other courts; but there were then few, if any, criminal cases prosecuted in the circuit court, or probably all of the duties of the circuit solicitors were taken from him and the circuit court and transferred to the criminal court. But the duty and right of the circuit solicitor to prosecute the same; and like cases in the criminal court, were imposed upon him by the local statutes, and therein he was named as the

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

assistant solicitor; and such were his rights and duties, and such were the rights and duties of the county solicitor, when both were elected in 1914, and when the general statute in question was passed (September 25, 1915).

The only effect as to the general statute in question as to these two officers was to preserve their status quo, as fixed by various local statutes, until the expiration of their terms of office, and until the first Monday after the second Tuesday in January, 1919. Both were elected in the same manner, on the same day, for the same terms of office, and by the same electorate; and their territorial jurisdictions were the same, and they prosecuted or performed all of their duties, or practically all of them, in the same courts. The circuit solicitor was not elected solicitor of the circuit court exclusively, but he was elected solicitor of and for the circuit, the same territory which composed the circuit court it is true; but his rights, powers, and duties were not confined to the circuit court by the Constitution or the statutes. Neither was the county solicitor elected solicitor of the criminal, city, or county court; he was elected solicitor of the entire county. It is true that his duties were not by the local acts expressly extended to the circuit court, for the reason, as we have shown, that there were but few, if any, duties for any solicitor to perform in the circuit court for the Tenth circuit, because that court's jurisdiction in criminal cases had been conferred largely, though probably not solely, upon the criminal and other courts of Jefferson county. There was therefore no necessity or occasion for assigning duties to the county solicitor to be performed in that court; and even the local acts had required the circuit solicitor to assist the county solicitor in the criminal, and probably other courts of Jefferson county.

(5) Counsel for appellants have fallen into the error of supposing and arguing that a circuit solicitor is elected solicitor of the circuit court, instead of solicitor of the circuit; that is, that he has the same territorial jurisdiction as has the circuit court. He is solicitor of that territorial jurisdiction, and not of the court. He is not a judicial officer of the circuit court, nor elected as such, but is a ministerial officer of the territory composing the circuit. It is true that his duties are usually and chiefly confined to the circuit courts; but he may be assigned to other courts, and even to the courts of other circuits. The Constitution makes this plain, when it says: "A solicitor for each ju-

dicial circuit or other territorial subdivision prescribed by the Legislature, shall be elected by the qualified electors of those counties in such circuit or other territorial subdivision in which such solicitor prosecutes criminal cases," etc.—Section 167.

He is not elected solicitor for the circuit court of that particular circuit, but solicitor of the circuit or territorial subdivision prescribed by the Legislature.

(6) Likewise, the county solicitor is not by the Constitution required to be solicitor for any particular court or courts in the county, but for the territorial subdivision known as the county; and the Legislature may assign him duties to perform in any or all of the special courts in the county, in which duties for any solicitor are to be performed. These duties may be so confined by the Legislature to one court, or extended to all courts wherein criminal prosecutions are had. It is the office and function of statutes, and not of the Constitution, to prescribe the courts in which constitutional or statutory solicitors shall prosecute. The Constitution names the circuit solicitor as a constitutional officer, and fixes his terms of office, the mode of his election by the qualified electors, the character (but not the amount) of his compensation—that is, that it shall be in the way of a salary and not that of fees or other compensation—and prohibits the increase thereof during the term for which he is elected; but it nowhere purports or attempts to fix, name, or prescribe his duties. These it leaves to the judgment and discretion of the Legislature. As the only duties thus far enjoined upon solicitors are ministerial, it is perfectly competent for the Legislature to say what duties he shall perform, and when he shall perform them, whether he shall perform them alone or with assistance, and whether he shall use his own discretion in the prosecutions of criminal cases, or whether he shall follow the advice and directions of other ministerial, judicial, or executive officers, so long as he is not deprived of his constitutional rights, or the constitutional office is not destroyed. The rights, character, and nature of his office have been held to be purely ministerial, and consequently may be directed and controlled by the Legislature.

In the case of *Diggs v. State*, 49 Ala. 311, 320, 321, the court, speaking through BRICKELL, J., in his first published opinion, says: "If a county solicitor is not a ministerial officer, it would be difficult, if not impossible, to define his character; all the duties with which he is charged pertain to the protection of the

state, and the general administration of the criminal laws.  He ·
attends on the grand jury, as their legal adviser, draws the
indictments they may find, prosecutes all indictable offenses, and
prosecutes or defends any civil action to which the state is a
party, pending in the circuit court.—R. C. § 856.  No one of
these duties involves executive or judicial functions.  They are
purely ministerial."

(7) No constitutional right of the solicitor is violated or
invaded by statutes directing him how and when he shall per-
form the statutory duties enjoined upon him.  Neither the office·
nor the rights, duties, or powers pertaining thereto are property
or personal rights secured to him by the Constitution.  The lead-
ing case on this subject is that of *Ex parte Lambert*, 52 Ala. 79,
in which the court, again speaking through BRICKELL, then Chief
Justice, said:   "The grant of legislative power by the Constitu-
tion of the state is a general grant of all the legislative powers
residing in the people as a sovereign community, subject only
to such limitations and qualifications as are expressed in the Con-
stitution of the state, or in the federal Constitution.—*Dorman v.
State*, 34 Ala. 216; *Ex parte Dorsey*, 7 Port. 293.  Within the
legislative power rests the creation and abolition of public of-
fices, the enlargement or diminution of the duties public officers
are required to discharge, and the measure of compensation they
may receive.  In the absence of express inhibitions in the state
Constitution, the legislative power is in this respect supreme.
If the Constitution creates an office, prescribes its duties, and
the mode of appointment, it is not competent for the Legislature
to create another office to discharge the same duties, and direct
his appointment in a different manner, but it may increase or
diminish the duties and compensation of the officer.—*Warner v.
People*, 2 Denio [N. Y.] 272, 43 Am. Dec. 740.  The Constitution
creates the office of 'commissioner of industrial resources,' pre-
scribes the duties of the incumbent, but declares he shall be
required 'to perform such other duties as the General Assembly
may require.'  It does not fix his compensation, but commits that
to the legislative power.  The office, unlike the offices known to
the common law, which, lying in grant, were deemed incor-
poreal hereditaments, has in it no element of property.  It is not
alienable or inheritable.  It is a personal public trust, created for
the benefit of the state, and not for the benefit of the individual
who may happen to be its incumbent."—52 Ala. 81, 82.

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

This case has been frequently followed by this and other courts; its exact language has been copied into text-books, and our constitutional provisions and statutes on the subject have been frequently re-enacted with this construction placed upon them; so in this state, at least, it is well-recognized law.

We cannot hold that the proviso attached to the last section of the general solicitors' bill, which merely provides that until 1919, the county solicitor of a certain county forming a given circuit shall be the "chief prosecuting officer of the county," ·destroys or attempts to destroy the office of circuit solicitor for the same county; certainly not, when the effect thereof is merely to preserve the status quo which prevailed in ·the county, and had prevailed for several years and even before either of the solicitors was elected, and which status is preserved only so long as the present terms of the two officers continue. The sole and apparent intent and effect of the proviso was to preserve the status quo as to prosecutions in Jefferson county until the terms of the incumbent solicitors shall expire.

(8) It is true that other sections of the solicitors' bill of which the proviso in question is a part do authorize the circuit solicitor, at his discretion, to appoint deputies, not to exceed three, which power he did not theretofore possess. We are not of the opinion that the last proviso in the solicitors' bill, which attempts to make the county solicitor chief prosecutor, has the effect to nullify the preceding provision authorizing the circuit solicitor to appoint assistants or deputy solicitors. The proviso in question does not occur in the same section of the bill which authorizes the circuit solicitor to appoint assistants; and it does not appear to refer or to relate to the provisions for appointment, or to the section of the act which contains it; but it appears to refer or apply only to section 10 of the act, which deals with the repeal of existing local and special laws establishing the office of county solicitor; and consequently the intent was only to except the local laws of Jefferson county as to county solicitors, from repeal until January, 1919.

(9) It is not unusual, and is perfectly competent, for the Legislature, by exception or proviso, to suspend the operation or going into effect of an entire act, or of any portion thereof, until a future date, or even until the happening of a future contingency; and we know of no constitutional objection to a proviso or exception in a general statute which fixes different dates in the

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

future at which the statute shall become effective in the repeal of other laws, as by providing the repeal of one statute to take effect at a given date, and the repeal of another statute, at another; or even providing the repeal of a part of the same statute to take effect at one date, and a part at another date.

The statute in question is full of such provisions, and so are many other statutes of this and other states. This is even a favorite mode, used in the Constitution, to work the repeal of statutes, or the extension of the terms of office of incumbents, as was done or attempted to be done in the last clause and proviso or exception in the solicitors' bill in question. Acts 1915, pp. 817, 823. Section 1 of the act in question, by a similar proviso, in terms makes certain county and city court solicitors not only chief prosecuting officers of certain counties, but makes them sole circuit solicitors; this in cases in which no circuit solicitors resided in the circuit, and where the county or city court solcitor was elected by the qualified electors, so as to conform to constitutional requisites. Other sections and clauses of the same statute make county and city court solicitors deputy and assistant circuit solicitors until 1919; in the last proviso, appellee was made chief prosecuting attorney for the county, instead of sole solicitor, deputy solicitor, or assistant circuit solicitor. If the Legislature had the power to do the one, we see no reason why it could not do the other. We see no constitutional objection or prohibition against the Legislature's providing two or more circuit solicitors, if it sees fit, and providing that one of them shall be the chief prosecuting attorney. While the Constitution expressly provides for but one solicitor to the circuit, yet it does not prohibit the Legislature from creating another. The language of the Constitution, as to the solicitor for each circuit, is very similar to, if not identical with, that providing for a judge of each circuit; and we have held that two or more judges could be provided for one circuit. The Legislature, on two or more occasions, provided for two judges of the Tenth judicial circuit, and the present statute provides for ten judges of the Tenth, and for two or more judges of several other circuits. Of course the passage of such other statutes as to circuit judges does not make the statute in question valid, but it does show repeated legislative construction of the constitutional provisions. And many were passed after decisions of this court upholding this class of enactments. The language of the Consti-

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

tution as to circuit judges is as follows: "Except as otherwise authorized in this article, the state shall be divided into convenient circuits. For each circuit there shall be chosen a judge, who shall, for one year next preceding his election and during his continuance in office, reside in the circuit for which he is elected."—Section 142.

We have above set out the provisions of section 167 of the Constitution as to solicitors.

If two or more judges can be provided for each circuit, we see no constitutional objection to providing two or more solicitors for each circuit. To hold that each judicial circuit could have but one judge and one solicitor, would practically destroy our present judicial system. Several of these statutes have been recently construed, to the upholding of the system to the extent that it is involved by this and like statutes; and we see no reason for declaring the present statute unconstitutional 'in whole or in any part involved on this appeal. We are constrained to hold that the proviso in question is valid, that it did not have the effect to deprive the circuit solicitor of his office, that both he and the county solicitor are prosecuting officers in the circuit and county in question, and that there is no constitutional inhibition against making the county solicitor the chief prosecuting officer, nor against authorizing him to supervise, direct, and control the prosecution, providing the enactment does not deprive the circuit solicitor of all or substantially all of his duties and powers as such solicitor. As before stated, it was expressly—and we hold correctly—decided that the Legislature could provide for two solicitors in the same circuit; and that merely providing that one shall be the chief prosecutor, with authority to direct and control prosecutions, does not deprive the other of his office, so long as there are duties and powers left for him to perform as such solicitor, and this is expressly done in the same act which makes the county solicitor chief prosecutor, among which is the power to appoint three assistants and deputies, if he so desires, and this power cannot be controlled by the county solicitor, and is not inconsistent with the county solicitor's being chief prosecutor.

(10) The general provisions in the Code (section 7781 et al.), as well as the statute in question, impose the duty and confer the right and power on both the circuit and the county solicitor to prosecute in the circuit and county for which they were elected,

199.]     OF ALABAMA.          333

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

and we do not see how the proviso takes away this right from the circuit solicitor.

The Code provisions, in connection with the provisions in question, with the act consolidating the courts in Jefferson county into a circuit court and transferring all criminal prosecutions from the criminal court of Jefferson county into the circuit court, and with the local statutes providing for a county solicitor for Jefferson county (which the proviso in effect says are not repealed until 1919), undoubtedly confer the right and impose the duty upon the county solicitor to prosecute in the circuit court until 1919.

These and other reasons lead us to hold that the proviso in question must be construed to make the county solicitor of Jefferson county the chief prosecutor of criminal cases, in the circuit court until January, 1919. First, the proviso says in terms, that he is to be the 'chief prosecuting officer of the county." The statute, as a whole, was dealing with the subject of solicitors or prosecuting officers for the entire state. At that time a statute had been passed consolidating all the courts of record of the state, with some exceptions, into circuit courts. The local statutes for Jefferson county and the Tenth circuit, which were one and the same in territory, which provided prosecutions of criminal cases in that circuit and territory, provided that the county solicitor and the circuit solicitor both should prosecute in the criminal court, the county solicitor as chief and the circuit solicitor as assistant; but few, if any, criminal cases were brought or prosecuted in the circuit court; but in January, 1917, all of these courts in which the chief, in number and importance, of criminal cases were brought and prosecuted were to pass out of existence, and the work was thereafter to be done in the circuit court, for which ten judges were provided, two of whom were to preside over criminal matters, and all these criminal cases were to be transferred to the circuit court.

Surely the Legislature would not have said that the county solicitor should continue to be the chief prosecuting officer for the county of Jefferson, if it was not intended that he should prosecute in the court into which all of the then pending cases were to be transferred and subsequent ones were to be brought. There would be no work for him to do, no duties to perform, except in such petty cases as might be brought in the inferior

court. We therefore feel no hesitancy in holding that this proviso, if valid, enjoined the duty upon the county solicitor to prosecute in the circuit court after January, 1917, and until January, 1919, as he had theretofore done in the criminal court which was absorbed and consolidated in the circuit court. If the Legislature had not meant this, they would have said so, as they did, touching solicitors in other counties dealt with in the same act.

It is agreed by counsel for appellant that the local acts for Jefferson county under which the county solicitor claims to exercise his same power and discharge his same duties as prosecuting officer for the county did authorize, or enjoin the duty upon, the county solicitor to appear in or prosecute cases in the circuit court. It is true that none of these local laws, so far as we find, did expressly authorize or direct that the county solicitor should prosecute in the circuit court; but, as we have shown, such a provision was useless, because there were few, if any, criminal proceedings in the circuit court, in consequence of which fact the circuit solicitor was directed to assist the county solicitor in prosecutions; and these local statutes were not then, and are not now, the sole respository of authority over the functions and duties of the county solicitor. The general repository of such authority—authority over the duties and jurisdiction of all solicitors—is to be found in the Criminal Code (vol. 3, c. 291, §§ 7778-7804). Section 7781 of the Code expressly makes it the duty of all county solicitors, as well as of circuit solicitors, to prosecute all criminal cases in the circuit court, at both general and special terms, and provides a penalty for failure to attend special terms had for the trial of criminal offenses. It also requires both circuit and county solicitors to prosecute, or defend, all civil actions in the circuit, or city court, in which the state is interested. The county solicitor is a county officer, expressly authorized and recognized by the Constitution, though one not required, as are circuit solicitors.

As was said in *Lusk's Case, supra,* the object and purpose of the proviso to section 167 of the Constitution, as to county solicitors, was to remove any doubt as to the right or power of the Legislature to transfer any of the duties of the circuit solicitor to any other officer, or, in other words, to permit any county solicitor to be authorized to prosecuted in the circuit courts, otherwise, the court demonstrated, that proviso as to county solicitors would perform no office; that before the adoption of the proviso,

there was, and could be, no doubt as to the power of the Legislature to provide such a county officer, and to authorize or require him to prosecute in the county courts, for such had been done from time immemorial. So there could be no doubt that at the passage of the solicitors' bill, both the circuit solicitor and the county solicitor had both constitutional and statutory warrant to prosecute crimes in all the courts of Jefferson county in which crimes were prosecuted, and this statutory authority by virtue of section 7781 of the Code. This section applies to both officers, and does not attempt to limit either to any given court in which crimes are prosecuted, though it does, as to civil cases, limit both to the city court and the circuit court.

We are of the opinion that it was not the intention to take from either of the present officers the rights, powers, or duties conferred and imposed, to prosecute in the circuit court until 1919. It is merely provided that until 1919 the county solicitor shall be the chief prosecutor for the county, just as he was at the passage of the act; and it is expressly provided that until 1919 he shall continue to exercise the same powers which he was then exercising. Neither did this proviso take from the circuit solicitor any of the powers or rights which he then had, unless it had the effect to place him under the supervision and control of the county solicitor, in the circuit court, as he had theretofore been, in the criminal court. Technically speaking, this change was probably effected by the proviso; but practically the proviso wrought no material change.

We therefore hold that both the circuit solicitor, Tate, and the county solicitor, Black, are authorized to prosecute criminal cases in the circuit court for Jefferson county—the Tenth judicial circuit—until 1919; that the county solicitor is made chief prosecutor for the county of Jefferson, which includes all of the Tenth circuit, and also for the circuit court provided for that circuit; and that, because the proviso of section 10 of the act in question, together with section 7781 of the Criminal Code, authorizes the county solicitor to prosecute in such circuit court; that making the county solicitor chief prosecutor does not deprive the circuit solicitor of his office, and is not subject to any other constitutional objection; that the circuit solicitor now has the right and power to appoint deputy solicitors, as is authorized by section 6 of the act of September 25, 1915 (p. 817); that such deputies, when so appointed by the circuit solicitor, have the right to

prosecute criminal cases in the circuit court, as is provided in that act, and are subject to the orders and directions of the circuit and county solicitors, as is authorized by the act, and by such other general acts relating to deputy solicitors as are not in conflict with the act of September 25, 1915, which provides for their appointment.

(11, 12) We further hold that the county solicitor has all the right anl power to appoint, or obtain, assistants and assistance, which he lawfully had under the provisions of the local laws of Jefferson county in force when the general solicitors' bill was passed (September 25, 1915), and may continue to exercise such powers until 1919; that abolishing the courts in which he and his assistants had theretofore prosecuted cases did not take away the powers or rights of the county solicitor or his assistants— they not being officers of the court so abated—and that his office was not abolished by the abolishing of some or all of the courts in which he prosecuted; that his assistants were not officers of any kind, the law authorizing their appointment fixing no terms, and no compensation except such as might be agreed upon between them and the solicitor; that the county solicitor can appoint them for as long, or for as short, a time as he may desire, limited only by his own tenure of office or his will; that he may also pay them whatever he deems proper, the law only providing a county fund, out of which the compensation should be paid on the order of the county solicitor; that the county solicitor is not obliged to employ any assistants or assistance, the law leaving this to his discretion.

(13) There is, therefore, this difference between the assistants which the circuit solicitor appoints, and those appointed by the county solicitor: The former are made officers, while the latter are not; but the propriety or necessity of appointing any or all authorized by law is left in both instances to the officer authorized to appoint. Whether this is wise or unwise legislation, of course, is not for the courts, but is the responsibility of the Legislature. Whether the circuit or the county will have too many, or too few, assistant solicitors, is of course in a measure left to the discretion of the appointing power, as well as the matter of the character or efficiency of the appointees. Upon the propriety of such legislation the court cannot and does not pass.

[Burnett v. Alabama Power Co.]

There are quite a number of specific objections urged to the constitutionality of section 10 of the act of September 25, 1915, as well as separate ones to the proviso of that section, and also specific objections to some of the local laws of Jefferson county conferring powers and authorities upon the county solicitor; such as, that section 45 of the Constitution was violated in their attempted enactment, and that section 10 and the provision were in effect passing a local law in violation of our Constitution as to the passage of local laws.

Neither these questions nor the arguments relating to them have been overlooked; but it would extend the opinion to too great length to treat them separately. Suffice to say, we find no constitutional objection urged, to be well taken.

It therefore results that the appeal in the quo -warranto proceeding is affirmed, and that the applications for mandamus are denied.

ANDERSON, C. J., and MCCLELLAN, GARDNER, and THOMAS, JJ., concur. SOMERVILLE, J., concurs in conclusion. SAYRE, J., dissents.