(76 South. 417)

### HENRY v. STATE ex rel. WELCH.
### (6 Div. 620.)

(Supreme Court of Alabama. July 2, 1917.)

1. DISTRICT AND PROSECUTING ATTORNEYS ⬤⟲ 3(5)—STATUTE—"SOLICITOR'S FUND."

The "solicitor's fund" of Jefferson county, mentioned in Acts 1900–01, p. 217, § 11, as amended by Loc. Acts 1915, p. 23, providing that the solicitor of Jefferson county shall have power to employ assistance and the expense shall be paid out of solicitor's fund, is made up of fees collected as solicitor's fees on all convictions in criminal cases in the county, and not merely such part of the fees as has been previously appropriated to the uses of the solicitor.

2. STATUTES ⬤⟲125(7)—TITLE—STATEMENT OF SUBJECT.

Acts 1900–01, p. 217, entitled "An act to amend an act entitled 'An act to establish the criminal court of Jefferson county' approved February 18th, 1887," and which added section 11, providing that the solicitor of Jefferson county shall have the power to employ assistance, and that the expense shall be paid out of the solicitor's fund of the county, and the amendment thereof by Loc. Acts 1915, p. 23, are not violative of Const. 1901, § 45, providing that each law shall contain but one subject, which shall be clearly expressed in its title, the section, before and after amendment, being germane and cognate to the general subject title of the act of 1887 (Acts 1886–87, p. 835), establishing the criminal court of Jefferson county.

3. STATUTES ⬤⟲138(2)—TITLE—AMENDMENT—CONSTITUTION.

Acts 1900–01, p. 217, § 11, providing that the solicitor of Jefferson county shall have the power to employ assistance, and that the expense shall be paid out of the solicitor's fund of the county, and the amendment thereof by Loc. Acts 1915, p. 23, are not violative of Const. 1901, § 45, forbidding the extension, amendment, or revision of a law by reference to its title only; the acts being complete in themselves.

4. DISTRICT AND PROSECUTING ATTORNEYS ⬤⟲ 3(5)—POWER OF COUNTY SOLICITOR—EMPLOYMENT OF ASSISTANCE—STATUTES.

Local Acts 1915, p. 23, amending Acts 1900–01, p. 212, § 11, to provide that the solicitor of Jefferson county shall have the power to employ any assistance he may deem necessary, and that compensation for such assistance shall be paid out of the solicitor's fund of the county, if there is a sufficient amount in the fund, etc., is still in force, and the county solicitor is clothed with the authority there given, as to which he has a discretion, and his power was preserved until 1919 by the general solicitors' act, subsequently enacted.

5. MANDAMUS ⬤⟲28, 72—EXERCISE OF JUDGMENT OR DISCRETION.

When the duty to be performed is judicial, or involves the exercise of discretion on the part of a tribunal or officer, mandamus will lie to set judgment or discretion in motion, but will not direct the manner of its exercise; mandamus cannot be used for the correction of errors, but lies to compel a proper exercise of a judgment or discretion abused and exercised in an arbitrary and capricious manner.

Sayre and Somerville, JJ., dissenting in part.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Mandamus by the State, on the relation of W. S. Welch, against M. V. Henry, Treasurer of Jefferson County, to compel the payment of warrant. From a decree granting the writ, the Treasurer appeals. Affirmed.

The mandamus sought to require the treasurer to pay the warrant drawn on May 28, 1917, for the sum of $300, payable out of the—

"solicitor's fund of Jefferson county, provided that a sufficient amount of solicitor's funds to pay said $300, and, if there is not such a sufficient amount in said solicitor's fund, out of the general fund of Jefferson county; provided further, there has not been drawn out of the general fund of Jefferson county for the year 1917, for the assistants or assistance or paying expenses incurred by the solicitor of Jefferson county in order to properly administer justice, as much as $5,000; the said amount of $300 having been appropriated for W. S. Welch as a salary as assistant solicitor for the month of April, 1917, as above set out."

The petition avers that the solicitor's fund in the treasurer's hands, is ample for the payment of this warrant, and also avers that the general fund has not been drawn on in 1917 for the purpose named, and contains money subject to the payment of warrants. The treasurer's answer avers that there is no legally defined fund known as the solicitor's fund out of which the warrant can be paid, or, if there be such a fund, it is limited to $3,000 per annum, which has already been exhausted for the purposes authorized, by warrants already paid or outstanding, and, further, "that there is no valid statute or authority for this respondent to pay said warrant out of the general funds of Jefferson county." It appears without dispute that more than $12,000 has been paid to the treasurer since January 1, 1917, to the credit of the solicitor's fund, consisting of fees paid in cases of convictions prosecuted by the county solicitor or his assistant. It further appears that warrants drawn on solicitor's funds since January 1, 1917, on the affidavits of the county solicitor aggregate the sum of $2,067.93, exclusive of $400 drawn in favor of the grand jury's stenographer under a separate special of December 10, 1900. At the time petitioner presented his warrant and the refusal of its payment by respondent there was an outstanding warrant of $200 drawn on the solicitor's fund in favor of B. F. Ray, on a proper affidavit by the county solicitor for services as assistant, which warrant had been previously presented to the treasurer, and its payment by him refused.

The proceedings and facts in the case of State ex rel. Ray v. Henry (6 Div. 622) 76 South. 422,[1] are the same as the facts in this case, except in that case the trial court denied the relief prayed for, and dismissed the petition.

Hugo L. Black, of Birmingham, for appellant. Forney Johnston, of Birmingham, for appellee.

PER CURIAM. [1-3] The majority, composed of ANDERSON, C. J., McCLELLAN, GARDNER, and THOMAS, JJ., concur in the conclusion of Justice SOMERVILLE as to what constitutes the "solicitor's fund" of

---
⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 480.

Jefferson county, but do not agree that section 11 of the act of 1900, or the amendment thereof by the act of 1915 (Local Acts, 1915, p. 23), is violative of section 45 of the Constitution. We think that said section before and after amendment was germane and cognate to the general subject title of the act of 1887 (Acts 1886-87, p. 835) establishing the criminal court for Jefferson county. Nor do we think that the same is repugnant to so much of said section 45 of the Constitution as forbids the extension, amendment, or revision of a law by reference to the title only as the acts are complete in themselves. State ex rel. Terry v. Lanier, 72 South. 320;[2] State v. Rogers, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520. The case of Ferguson v. Court of County Commissioners, 187 Ala. 645, 65 South. 1028, was rested upon Tuskaloosa Bridge Co. v. Olmstead, 41 Ala. 9, wherein it was held that under what is now section 45 of our Constitution a law could not be amended or revised by reference only to its title, and wherein it was pointed out that the purpose of said constitutional provision was that the Legislature may not be misled or mistaken as to the enactment, and also that the Governor may be better informed as to what he is called upon to approve or to veto, and that others may also be assisted as against any misapprehension. The acts under review in the above authorities attempted amendment of a law by reference to title only and by addition of other sections thereto, nothing appearing in the amendment to indicate the law sought to be amended, and hence these cases came directly within the prohibitory clause of said section 45 of the Constitution. Such is not the situation here presented, as much of the act sought to be amended is set out, and indeed the substance thereof appears in the amendatory act, and the Tuskaloosa Bridge Co. and Ferguson Cases, supra, cannot be extended so as to embrace the act under review.

[4] While we hold that the act of 1915 (page 23) is still in force, and that the county solicitor is clothed with certain authority there given and as to which he has a discretion, and that this power was preserved until 1919 by the general solicitors' act subsequently enacted, we must not be understood as holding that other parts of the general solicitors' law may be ignored by the county solicitor in the exercise of the powers given him under said general law, or the local act of 1915, so as to clothe him with the authority to disregard the prosecuting officers expressly provided for the administration of the criminal laws of the Tenth circuit, which is composed entirely of Jefferson county. In other words, the Legislature has expressly furnished a circuit solicitor to be paid by the state, and expressly authorized him to appoint three assistants to be paid in the greater part by the state, and it was contemplated that these officials should be utilized to the

fullest extent before the temporary chief prosecuting officer of the county would deem it necessary to resort to assistance at the expense of the solicitor's fund. The Legislature evidently did not intend to furnish these expressly designated and well-paid officials to remain idle or become pensioners upon the state upon a capricious abuse of the authority and discretion of the county solicitor, who was made the chief prosecuting officer of the circuit until 1919. It is manifest that he was expected to see that they did work and not prevent them from doing so, and until the force expressly provided is proven inadequate to properly administer the criminal laws of the circuit no occasion should arise for the employment of assistants by the "chief prosecuting officer." Why the Legislature should have made the county solicitor, and not the circuit solicitor, the chief prosecuting officer of the circuit, or why the circuit solicitor, and not the county solicitor, was given the authority to name the assistants, we are not concerned; but this court is concerned with a reasonable and common sense interpretation and enforcement of the law.

[5] It is well-settled law that when the duty to be performed is judicial or involves the exercise of discretion on the part of a tribunal or officer, mandamus will lie to set judgment or discretion in motion, but will not direct the manner of its exercise.

"The writ cannot be used for the correction of errors. If, however, judgment or discretion is abused and exercised in an arbitrary and capricious manner, mandamus will lie to compel a proper exercise thereof." 19 Amer. & Eng. Ency., pp. 737-739; State ex rel. Mobile v. Board of Revenue, 180 Ala. 494, 61 South. 368; White v. Decatur, 119 Ala. 476, 23 South. 999.

Whether or not these observations are essential to a decision of the present controversy matters not, as they are at least appropriate to prevent a misconception of the scope and extent of what we have decided in holding that the mandamus should have been awarded under the facts and issues here involved.

In granting the petitioner's relief we assume that the discretion given the county solicitor to employ "assistance" has not been capriciously abused, nothing to the contrary appearing from the record. We therefore hold that the trial court correctly awarded the writ of mandamus in the Welch Case and erroneously refused the same in the Ray Case.

ANDERSON, C. J., and McCLELLAN, GARDNER, and THOMAS, JJ., concur. SAYRE and SOMERVILLE, JJ., dissenting in part. MAYFIELD, J., not sitting.

SOMERVILLE, J. (dissenting in part). The refusal by the county treasurer of Jefferson county to pay the salary warrant here exhibited challenges the constitutional valid-

---

[2] 197 Ala. 1.

ity of section 11 of the act approved December 7, 1900 (Acts 1900–01, p. 217), and also of the act approved July 9, 1915 (Local Acts 1915, p. 23); and this appeal requires us to consider and determine that question. It is to be noted, by way of preface, that the criminal court of Jefferson county was established by an act approved February 18, 1887, entitled "An act to establish the criminal court of Jefferson county" (Acts 1886–87, p. 835), and which did not in any way deal with or relate to the office of county solicitor of Jefferson county, or the disposition of fees collected upon convictions in said criminal court. The office of county solicitor of Jefferson county was created by an earlier act approved November 27, 1886 (Acts 1886–87, p. 709), and his compensation was made the same as that of circuit solicitors, viz. the solicitor's fees taxed by law in convictions secured in the courts wherein he served. By an act approved February 28, 1887 (Acts 1886–87 p. 996), said county solicitor was placed on a salary, and the solicitor's fees theretofore paid him on convictions in the county, city or criminal court were turned into the general fund of the county.

It is to be noted also that by the act approved February 18, 1891 (Acts 1890–91, p. 1148), there was provided a fund of $3,000, to be appropriated by the commissioners' court out of moneys paid into the county treasury as solicitor's fees, "to assist the solicitor of Jefferson county in suppressing crime as hereinafter provided." The purposes thereinafter specified for the use of this fund were: (1) The employment by the solicitor of a competent assistant prosecutor and a clerk or stenographer for his own office; and (2) the payment of $500 per annum to the solicitor of the Tenth judicial circuit. In addition, it was also provided that, in the discretion of the commissioners' court, with the approval of the judge of the criminal court, they might pay claims for expenses in transporting criminals or state's witnesses from beyond the state out of county funds paid in as solicitor's fees.

By the act approved February 18, 1897 (Acts 1896–97, p. 1121), it was provided:

"That the moneys in the county treasury of said [Jefferson] county paid into said treasury as solicitor's fees, after the payment of the salary of the solicitor of said county and an appropriation of three thousand dollars per annum to be paid out to assist the solicitor of Jefferson county in suppressing crime, as provided in an act approved February 18, 1891, shall be paid into the fine and forfeiture fund of said county, and shall be a part of said fund."

So far as the series of local acts above noted undertake to deal with solicitor's fees, or funds derived from such fees, their operation, with a single exception, is clearly restricted to solicitor's fees collected on convictions in the county, city or criminal courts of Jefferson county, and does not include such fees collected in the circuit courts. The exception noted is found in the act of December 10, 1900 (Acts 1900–01, p. 308), which provides for the employment of a stenographer to transcribe testimony for the solicitor and to attend grand jury sessions of the criminal court for the same purpose. The compensation there provided is "to be paid out of the solicitor's fund arising from convictions in said court," i. e., the criminal court. This act is, by necessary implication, repealed by the Court Consolidation Bill (Acts 1915, p. 279), which by abolishing the criminal court of Jefferson county rendered impossible both the performance of the services provided for and their compensation in the manner stipulated.

With these brief references to the several local acts for Jefferson county which are deemed more or less pertinent to the question in hand, we turn to a consideration of the two local acts whose constitutionality is here directly assailed.

1. The Act approved December 7, 1900 (Acts 1900–01, p. 212) is entitled "An act to amend an act entitled 'An act to establish the criminal court of Jefferson county,' approved February 18, 1887." It amends and re-enacts sections 2, 5, 6, 7, 8, 9, 10, 12, 18, and 19 of the amended act, and adds as new matter the following:

"Sec. 11. Be it further enacted, that the solicitor of Jefferson county shall have the power to employ any assistance he may require, to properly administer justice, and the expenses incurred by him therein shall be paid out of the solicitor's fund of said county. The board of revenue of said county are authorized, and they are hereby required to appropriate out of the solicitor's fund, any amount necessary in addition to the amount now appropriated or authorized to be appropriated by law, for the payment of such assistance; such amount to be paid upon the affidavit of the solicitor, that same was necessary."

2. The Act approved July 9, 1915 (Local Acts 1915, p. 23) is entitled:

"An act to amend an act entitled 'An act to establish the criminal court of Jefferson county, Alabama, approved February 18, 1887,' which said act was approved December 7, 1900."

Its only provision is that section 11 of said amendatory act be amended so as to read as follows:

"Be it further enacted that the solicitor of Jefferson county shall have the power and he is hereby given the authority to employ any assistance he may deem necessary to properly administer justice and to fix the compensation to be paid for such assistance, and to incur any expenses he may deem necessary to properly administer justice, and such compensation for such assistance, and all such necessary expenses shall be paid out of the solicitor's fund of said county, provided there is sufficient amount in said fund to pay said compensation or expenses at the time the same is due under the provision of this act, but provided further, if there is not a sufficient amount in said solicitor's fund to pay such compensation or expenses at said time, the treasurer of Jefferson county is hereby authorized and required to pay said amount or amounts out of the general fund of Jefferson county. The board of revenue of said county is hereby authorized and required to appropriate out of the solicitor's fund, or the general fund as above

provided, any amount necessary, in addition to the amount now appropriated or authorized to be appropriated by law, for the payment of such assistance; such amount to be paid upon the affidavit of the solicitor that such assistance or expense was necessary to properly administer justice: Provided, that the amount so expended or drawn out of the general fund of Jefferson county shall not exceed the sum of $5,000.00 in any one year."

We may as well state now as later that we have no difficulty in reaching the conclusion that, when the phrase "solicitor's fund" has been used by the Legislature, without limitation as to constituents, the natural meaning and intendment is the means of the fees collected as solicitor's fees on all convictions in criminal cases in Jefferson county, and not merely such part of those fees as has been previously appropriated to the uses of the solicitor. In short, the "solicitor's fund" is the fund earned as fees by solicitors, whether it be thereafter made a part of the general fund, or of the fine and forfeiture fund, or a special fund for the use of the county solicitor. It relates to and is co-extensive with the source of its derivation, rather than its final legislative destination or disposition which may be changed from time to time. But, if there were any substantial doubt as to the inherent meaning of the phrase "solicitor's fund," we think it would be resolved in favor of the construction stated in view of the very nearly, if not quite, uniform practice of the officers of Jefferson county in so keeping and dealing with it for a great many years.

We conclude, therefore, that the two acts in immediate question are intended to devote to the uses therein named all the solicitor's fees collected in Jefferson county, including those collected in the circuit court, and also those collected in convictions secured by the county solicitor's assistants, who are authorized by law to conduct prosecutions in his name and stead. Whether, if valid acts, they effect an entire repeal of the act of February 18, 1897 (Acts 1896-97, p. 1121), covering annual balances of solicitor's fees into the fine and forfeiture fund, we are not now called on to determine. This being true, and the record showing that the solicitor's fund as thus constituted, and now in the hands of the treasurer, is ample for the payment of petitioner's warrant, as well as of the other outstanding warrant in favor of Ray, the right to its payment depends primarily upon the validity of section 11 of the act of December 7, 1900 (Acts 1900-01, p. 212).

The definite constitutional objections urged against its validity are that it violates: (1) Subdivision 24 of section 104 of the Constitution of 1901; (2) section 45 of the Constitution of 1901 (section 2, art. 4, Const. 1875); and (3) section 68. So far as the act of December 7, 1900, is concerned, it could not be invalidated by the inhibition of section 104 of the Constitution of 1901, since the section is not found in the Constitution of 1875, and was not in force when the act of 1900 was approved, nor of section 68 of the Constitution of 1901, as to that portion inhibiting any increase of fees or allowances to public officers during their term of office, which was also not found in the Constitution of 1875.

With respect to section 45 of the Constitution of 1901 (section 2, art. 4, Const. 1875), counsel for respondent conceives that section 11 of the act of December 7, 1900, violates its provisions in two particulars: (1) It attempted to amend the body of the act of February 18, 1887 ("to establish the criminal court of Jefferson county") by the addition of new matter, if germane to its provisions, by reference to its title only, without re-enacting and publishing the portion that was extended; and (2) in view of the limited scope of the title and purpose of the amended act, and the breadth of the operation of section 11 of the amendatory act, section 11 is not germane to the subject-matter of the amended act, and hence the amendatory act contains two distinct subjects, only one of which is expressed in the title.

A majority of the court hold that the act of December 7, 1900, does not violate section 45 of the Constitution of 1901 (section 2, art. 4, Const. 1875), and their views are expressed in a separate opinion. My own view, in which SAYRE, J., concurs, is to the contrary, and my reasons will be found in the succeeding paragraphs of this opinion.

We have already noted the title and scope of the amended act ("to establish the criminal court of Jefferson county"). Under this title it might have properly provided for the office of solicitor of the court, and defined his duties and powers, and fixed his compensation, and unquestionably it might have provided for the collection and disposition of costs, fees, and fines in cases of conviction in that court. But could section 11 of the amendatory act of December 7, 1900, have been properly incorporated in the original act? This is the decisive question, and its solution requires an analysis of section 11 and a consideration of the duties and powers of the county solicitor of Jefferson county, which do not relate to prosecutions in the criminal court. I therefore note the following postulates:

(1) The county solicitor fills an office created by a separate special act. He is not solicitor merely of the criminal court, but also of the city and county courts, and has authority to prosecute even in the circuit court. State ex rel. Gaston v. Black, 74 South. 387.[3] And he is required to "represent the state and county in all cases where the state or county may have an interest." Acts 1886-87, p. 709.

(2) The act of December 7, 1900 (section 11) is in fact, though not in name, an amendment of the act of February 18, 1891, which created a fund of $3,000 from solicitor's fees

[3] 199 Ala. 321.

paid into the county treasury, "to assist the solicitor of Jefferson county in suppressing crime," as therein specified.

(3) The act of December 7, 1900 (section 11) authorizes the county solicitor "to employ any assistance he may require to properly administer justice," and directs that "the expenses incurred by him therein shall be paid out of the solicitor's fund of said county." The purpose of this appropriation has no relation "to the establishment of the criminal court of Jefferson county," nor to proceedings therein, except remotely by way of casual incident. It goes far beyond the administration of that court, and is coextensive with the office of county solicitor, and follows his activities in all the courts of the county, as well as in other fields. Again, it withdraws from the fine and forfeiture fund of the county (see Acts 1896–97, p. 1121) all the solicitor's fees paid into the treasury in excess of the solicitor's salary and the $3,000 devoted to his "assistance," and including solicitor's fees collected upon convictions in other courts than the criminal court. Such a withdrawal and appropriation of a part of the fine and forfeiture fund thus constituted is in no sense germane to the title and purpose of the amended act.

I cannot escape the conviction that section 11 of the act of December 7, 1900, was but a "rider" to an amendatory act to whose title, scope, and lawful purpose it was wholly foreign, and that it violated section 45 of the Constitution in its requirement that "each law shall contain but one subject which must be clearly expressed in its title." This vice is the more clearly accentuated when it is observed that, under the guise of a mere amendment to an act establishing a criminal court, it in fact substantially enlarged the provisions of the act of February 18, 1891 (Acts 1890–91, p. 1148), and in fact qualified, if it did not repeal, the act of February 18, 1897 (Acts 1896–97, p. 1121), without indicating by the remotest suggestion in its title that it carried such a purpose. This court has always construed this constitutional requirement liberally in favor of the validity of legislative enactments. But, when it is clearly and unmistakably violated, we have, though with reluctance, but in accordance with our bounden duty, applied the rule and declared the act invalid. Sanders v. Elmore County, 117 Ala. 543, 23 South. 788; State v. Miller, 158 Ala. 59, 48 South. 496; Benton v. State ex rel. Girard, 168 Ala. 175, 52 South. 842; State ex rel. Troy v. Smith, Auditor, 187 Ala. 411, 65 South. 942. The purposes of the requirement have been fully expounded by Brickell, C. J., in Lindsay v. U. S., etc., Ass'n, 120 Ala. 156, 24 South. 171, 42 L. R. A. 783. Briefly stated, they are: (1) To prevent "log-rolling" legislation; (2) to prevent surprise or fraud upon the Legislature; and (3) to fairly apprise the people of the subjects of legislation that are being considered. And in that case it was said:

"When there is fair expression of the subject in the title, all matters reasonably connected with it, and all proper agencies or instrumentalities, or measures, which will or may facilitate its accomplishment, are proper to be incorporated in the act, and, as usually said, are cognate or germane to the title."

Tested by these considerations, the act of December 7, 1900, is in my judgment a clear and unmistakable violation of the constitutional requirement, and must be declared invalid.

The act of July 9, 1915 (Local Acts 1915, p. 23), amendatory of section 11 of the act of December 7, 1900, is necessarily subject to the same infirmity, and adds no validity to the former act.

It is the contention of counsel for petitioner that the constitutional question just considered was passed upon by us in the recent case of State ex rel. Gaston v. Black, 74 South. 387.[4] An examination of the record in that case will show that the question was not there involved. It was not, in fact considered by the court, though a very general dictum will be found to the effect that "specific objections to some of the local laws of Jefferson county conferring powers and authorities upon the county solicitor" had been considered, and found not well taken, and the opinion declares that "the county solicitor has all the right and power to appoint or obtain assistants and assistance, which he lawfully had under the provisions of the local laws of Jefferson county in force when the general solicitors' bill was passed." The real question in this regard was only whether the appointments of assistant solicitors by the circuit solicitor, Tate, were valid. It was held in State ex rel. Gaston v. Black, supra, that the abolishment of the city and criminal courts of Jefferson county did not affect the powers of the county solicitor under local acts, by reason of the proviso found in section 10 of the general solicitor's bill (Acts 1915, p. 817), which disposes of some of the contentions now made by the respondent. It was also held in State ex rel. Turner v. Henderson, 74 South. 344,[5] that an act giving authority to the Attorney General to employ such special assistants "as the public interest requires," with an undefined appropriation for their compensation, was not subject to the constitutional objection. That case disposes of another contention of respondent that the acts here involved are void for want of certainty as to their objects, and the powers conferred by them. Noting now our conclusion that the act of December 10, 1900 (Acts 1900–01, p. 308), providing for the employment and compensation of a stenographer, was repealed by the Court Consolidation Bill (Acts 1915, p. 279), it results, in my opinion, that the money paid the stenographer employed by the county solicitor since January 1, 1917, must be charged to the fund of $3,000 provided by the act of February 18,

[4] 199 Ala. 321.    [5] 199 Ala. 244.

1891 (Acts 1890–91, p. 1148), which is the only fund legally provided for the assistance of the county solicitor, in view of the invalidity of the act of December 7, 1900, and the act of July 9, 1915. And, since more than $2,600 had otherwise been drawn from that fund on the affidavits of the solicitor since January 1, 1917, it appears to the writer, in which SAYRE, J., concurs, that that fund was fully exhausted before the presentation of either of the warrants drawn in favor of the relator, Welch, and the other assistant, Ray.

It results, however, from the majority view, that the amount of the solicitor's fund in the hands of the respondent treasurer was ample for the payment of the relator's warrant, as well as that of B. F. Ray; and the judgment of the trial court in awarding the writ must be affirmed.