### STATE DOCKS COMMISSION et al. v. STATE ex rel. JONES.

1 Div. 795.

Supreme Court of Alabama, Special Term.
Sept. 29, 1933.

Rehearing Denied Nov. 10, 1933.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellee.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for appellants.

524

E. W. Pettus, of Selma, J. T. Stokely, of Birmingham, and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, filed briefs, amici curiæ, on behalf of appellee.

PER CURIAM.

Appellee Jones, petitioner in the court below, had a contract with the State Docks Commission on and prior to September 1, 1932, for employment as superintendent of the docks at Mobile, which are the property of the state, at an agreed salary of $324 per month, and for several months prior to May 1st had been paid his agreed compensation at that rate regularly on the 15th and last days of each month.

He remained in such employment during the months of May, June, and July, 1933, and all respondents to the petition in the court below admitted that he during that time faithfully performed the services required of him by his contract of employment.

It was further admitted that the State Docks Commission and its secretary and treasurer had on hand and available sufficient funds not otherwise appropriated to have fully paid him his full salary of $324 for each of said months of May, June, and

July, 1933. It was further admitted that he made proper demand for the full payment of his monthly stipend at said rate of $324 per month and, on being paid less, made due protest. The State Docks Commission ordered the secretary and treasurer, Bruce, to pay Jones the full amount of his salary at the rate of $324 monthly, but the secretary and treasurer, having full control of the funds, refused to pay him at said rate, but did pay him at a rate of 70 per cent. of the salary that had been paid him for the month of September, 1932. The refusal of Bruce, the secretary and treasurer, to pay more was based on section 6 of an act of the Legislature of Alabama, approved April 14, 1933. Gen. Acts 1933 (Ex. Sess.) pp. 124, 130.

Jones, being without other remedy, resorted to a mandamus proceeding in the circuit court of Mobile county to compel the additional payment, and it is conceded that mandamus is his proper remedy, if any he has. In his petition Jones attacks the validity of the act approved April 14, 1933, on the following grounds: (1) The act is unconstitutional, null and void; (2) if valid, it is without application to the petitioner or his employment; (3) if valid and applicable, then section 6 of the act has no application to the petitioner or his employment, but in that case his salary would be fixed by section 1 of the act at $300 per month. The prayer of the petition is that a writ be issued commanding the respondents to pay petitioner the balance of his salary as claimed by him, or, if he be mistaken in the amount claimed, such sum as may be found to be due to him.

Bruce, one of the respondents in the court below, demurred to the petition on the following grounds:

1. Said petition shows on its face that the petitioner is not entitled to the amount of money which it is sought to have this respondent pay to him.

2. Said petition shows on its face that the order of the State Docks Commission requiring this respondent to pay to the petitioner the amount of money sought to have paid him by this respondent has been superseded by the act of the Legislature approved April 14, 1933.

3. For that said petition shows on its face that the said the State Docks Commission was without authority to require this respondent to pay to the petitioner the amount of money sought by him to be paid by this respondent.

4. For that said petition shows on its face that under the act of the Legislature of April 14, 1933, the petitioner was entitled on May 15, 1933, to have this respondent pay to him only the sum of $113.40, and not the sum of $162.

5. For that the averment of said petition that the act of the Legislature of Alabama approved April 14, 1933, is unconstitutional and void, is the conclusion of the pleader.

6. For that this court knows that the act of the Legislature of April 14, 1933, referred to in said petition, is constitutional, valid, and enforceable, and operates to reduce the salary of the petitioner as therein provided.

The court below overruled the demurrer, whereupon all the respondents answered admitting as true all the facts alleged in the petition. The court below then made and entered an order granting the peremptory writ as prayed for, the alternative writ having been waived, and adjudged that petitioner Jones was entitled to the full amount claimed by him as compensation for his services for the months of May, June, and July, 1933, at the rate of $324 per month. The appeal is taken by J. H. Bruce, as secretary and treasurer of the State Docks Commission, and the other respondents, the State Docks Commission and its individual members, join in the appeal.

Appellants assign as error (1) the overruling of the demurrers to the petition, and (2) the grant of relief.

The validity of the whole act was vigorously assailed in the oral argument before this court and is likewise assailed in several briefs filed as being violative of the various provisions of section 45 of the Constitution: (1) That the act contains more than one subject; (2) that the subject is not clearly expressed in the title; (3) that the act, or at least some of the provisions thereof, notably section 6, revised, amended, extended, or confirmed provisions of existing law or laws without reciting and publishing same at length. The validity of the act is also challenged as violative of section 61 of the Constitution, in that Senate Bill 183 was so altered or amended on its passage through either the Senate or the House of Representatives "as to change its original purpose." It is further strenuously insisted that section 6 of the act is especially repugnant to many, if not all, of the provisions of sections 45 and 61 of the Constitution and that its presence in the act invalidates the whole act. It is also insisted that should other parts of the act be valid, the invalidity of section 6 forbids its operation upon appellee Jones' salary or compensation. It is also insisted that the last clause in section 1 of the act, prescribing that the salaries of all employees of the State Docks Commission, other than the general manager, should not exceed $3,600 per annum, which provision originated in an amendment offered by Mr. Swift in the House of Representatives, was not legally adopted in the House, in violation of section 64 of the Constitution, which provides that: "No amendment to bills shall be adopted except by a majority of the house wherein the same is offered, nor unless the amendment with the

names of those voting for and against the same shall be entered at length on the journal of the house in which the same is adopted."

Appellee also contends that said Swift Amendment, which originated in the House of Representatives, was not properly concurred in by the Senate, in violation of said section 64 prescribing that: "No amendment to bills by one house shall be concurred in by the other, unless a vote be taken by yeas and nays, and the names of the members voting for and against the same be recorded at length on the journal."

Lastly, counsel for appellee Jones and other distinguished attorneys, amici curiæ, contend that contracts of employment such as that made by Jones with the State Docks Commission are protected from abrogation by both the state Constitution and section 10 of article 1 of the Constitution of the United States, prescribing that "No state shall * * * pass any * * * law impairing the obligation of contracts." Counsel for appellee invoke the doctrine that the journals of the House and Senate are conclusively presumed to be correct, and this court takes judicial notice of their contents. State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 So. 942, Ann. Cas. 1914D, 248.

■ The condition of the record and the elaborate arguments here presented make it incumbent on us as an appellate court to consider and pass upon every specific and applicable constitutional question presented here by argument or brief, provided the court is so advised in the premises as to be relieved of the burden of its making a search of the journals to ascertain the true status. This latter duty "rests upon the complaining party, and not upon the court." Fitzpatrick v. State, 169 Ala. 1, 53 So. 1021, 1023; State ex rel. Crumpton v. Montgomery, Excise Commissioners, 177 Ala. 212, 220, 221, 59 So. 294; State ex rel. Knox v. Dillard, 196 Ala. 548, 72 So. 56. Counsel here have complied with the foregoing rule, and if it is found by us that there be any discrepancy between the published act and the House and Senate Journals, such journals are referred to as conclusive proof of the form and terms of the act as passed. Mayor & Aldermen of City of West End v. Simmons, 165 Ala. 359, 51 So. 638.

The question is also raised in the court below and in this court that the act does not apply and cannot constitutionally apply to appellee Jones' salary due to the provisions of section 93 of the Constitution as amended (Amendment 12), known as the Mobile Seaport Amendment.

The title of the original bill reads as follows: "A bill to be entitled an act to fix the salaries of certain officers and employees of the State or any department thereof, and to provide how the same shall be paid; to provide that the salaries fixed by this act shall be in lieu of the salaries now provided by law; and to provide for the repeal of all laws or parts of laws in conflict with the provisions of this act; and to provide for the effective date of this act."

The body of the original act conformed, we think, strictly to the title and fixed the annual salaries of certain officers and employees of the state and departments thereof at certain definite and fixed amounts in dollars. It also provided that the salaries "herein fixed" shall be "in lieu of the respective salaries now provided for the respective officers or employees herein named and designated," and repealed all laws in conflict therewith. Section 5 of the bill reads as follows: "This act shall take effect on the first day of the month next succeeding the ratification of any constitutional amendment removing or suspending constitutional restrictions or limitations upon decreasing or diminishing the salary, fees or compensation of any officer, officers or employees during the term for which they shall have been elected or appointed."

On the twenty-first day of the Special Session, March 17, 1933, the standing committee on finance and taxation reported to the Senate that said committee, in session, had acted favorably on S. B. 183 with a substitute and the bill received its second reading and was placed on the calendar.

On the twenty-third day of the Special Session, the substitute for the bill returned by the committee was laid on the table and another substitute for Senate Bill 183 was offered by Messrs. Lapsley and Lusk, which was spread at length upon the journal. After a number of amendments to this substitute were laid upon the table and only one slight amendment adopted changing the salary of the state geologist, the substitute was adopted by a yea and nay record vote, and the bill as thus amended was read a third time and duly passed and ordered sent to the House without engrossment.

The title to this substitute bill adopted and passed by the Senate is different in phraseology from the title of the original bill in the following particulars:

After the word "fix" in the title of the original bill are added the words "limit or regulate." After the word "salaries" are added the words "and compensation." The word "paid" is changed to "payable." The clause reading "to provide that the salaries fixed by this act shall be in lieu of the salaries now provided by law" was left out; and the words "provide for the effective date of this act" were changed to "provide when this act shall become effective." And the title to the new bill as therein changed reads as follows: "A Bill to be entitled an act to fix, limit or regulate the salaries and compensation of certain officers and employees of the state or any de-

partment thereof and to provide how the same shall be payable; and to provide for the repeal of all laws or parts of laws in conflict with the provisions of this act; and to provide when the provisions of this act shall become effective."

Section 1 of the substituted Senate Bill 183, adopted by the Senate and sent to the House by the Senate without engrossment, as it appears on the Senate Journal, provides, as did section 1 of the original bill, for annual fixed salaries of certain officers and employees of the state and departments thereof at definite fixed amounts in dollars. The material changes made in the body of the substitute bill adopted by the Senate were, so far as it is pertinent to any question of law here to be considered, in sections 5 and 6 of the substitute bill. Section 5 of the substitute bill reads as follows: "Section 5. As to all salaries herein provided for officers or employees not elected or appointed for any term of office and which salaries are subject to reduction now, this act shall become effective on and after the first day of the month succeeding the approval of this act, and as to all other salaries herein, this act shall take effect on the first day of the month next succeeding the ratification of any constitutional amendment removing or suspending constitutional restrictions or limitations upon decreasing or diminishing the salary, fees or compensation of any officer, officers or employees during the term for which they shall have been elected or appointed." And section 6 of the substitute bill adopted by the Senate read as follows: "The maximum salary or compensation which may be paid to any officer or employee of the hereinafter mentioned departments, boards or commissions of the state, whose salary or compensation is not hereinabove fixed, shall not exceed the following maximum amounts, viz.: The maximum amount of the salary or compensation of such other officers or employees of the Department of Agriculture and Industries shall be $100.00 per month." Followed by like provisions, State Board of Health, $200 per month; State Board of Administration, $100 per month; Convict Department, $100 per month; Child Welfare Department, $100 per month; State Department of Education, $125 per month; State Tax Commission, $100 per month; Alabama Public Service Commission, $100 per month.

The substitute Senate Bill 183 reached the House on the twenty-fourth day of the Special Session of the Legislature, was read one time, and duly referred to the standing committee on appropriations. On the twenty-sixth day the standing committee on appropriations reported to the House that it had, in session, acted on the Senate Bill 183 and ordered same returned to the House without recommendation, and the bill was read a second time and placed on the calendar. On the twenty-ninth day of the Special Session the bill was taken up, and Mr. Barber offered a substitute which is set out at length on the House Journal. Mr. Kelly offered a substitute for the substitute offered by Mr. Barber which is also spread at length on the House Journal. Mr. Kelly's substitute was, by a yea and nay vote, laid on the table. Various amendments to the Barber substitute were then adopted. Mr. Harrison then offered a substitute for the substitute offered by Mr. Barber which was spread at length on the journal. Immediately after the copy of the Harrison substitute on the Journal of the House we find a recital that a motion to lay the substitute on the table was lost by a yea and nay vote, and immediately succeeding that recital and the names of the members voting thereon we find the following language: "And the substitute offered by Mr. Harrison for the substitute offered by Mr. Barber as amended was adopted. Yeas 73, nays 12." Followed by a list of the names of the members voting yea and those voting nay. Immediately following this recital there is a recital of the adoption of an amendment by Mr. Morris, the laying on the table of an amendment offered by Mr. Goode, the adoption of an amendment offered by Mr. Sossaman, and we then find the following recital:

"Mr. Swift offered the following amendment to the substitute for S. B. 183 offered by Mr. Barber, amended by the substitute by Mr. Harrison.

"Amendment by Mr. Swift.

"Amend the substitute S. B. 183 by adding to Section 1 'The salaries of the officers and employees of the State Docks Commission shall be as follows:

" 'General Manager, $6,000.00.

" 'The salary of no other employee shall exceed $3,600.00.'

"And the amendment offered by Mr. Swift was adopted."

The journal fails to show that a separate yea and nay vote on the amendment offered by Mr. Swift was taken. Just after the words "And the amendment offered by Mr. Swift was adopted," we find the following language: "And the substitute offered by Mr. Barber as amended by the substitute offered by Mr. Harrison, as amended, was adopted. Yeas 73, nays 12." Followed by the names of the voting members; followed by the recital: "And said bill S. 183 (reciting the title), as amended, was read a third time at length and passed. Yeas 86, nays 4." Followed by the names of the voting members.

On the thirtieth day of the Special Session the Senate Journal shows the following entry:

"Message from the House.

"Mr. President: The House has amended as therein shown and, as amended, has passed Senate Bill 183, To fix, limit or regulate the salaries, etc. (reciting fully the title) and returns same herewith to the Senate."

528

Then follows the recital:

"House Message.

"On motion of Mr. Lapsley, the Senate concurred in the following amendment by the House to S. B. 183, the title of which is set out in the foregoing message from the House, to-wit:

"By Mr. Harrison.

"Substitute for substitute for S. B. 183."

Then follows at length a copy of the substitute offered by Mr. Harrison as the same appears on the House Journal down to and including section 10. Immediately following section 10, which is the last section in the Harrison substitute, we find the following:

"Amend the substitute for S. B. 183 by adding to Section 1.

" 'The salaries of the officers and employees of the State Docks Commission shall be as follows:

" 'General Manager, $6,000.00.

" 'The salary of no other employee shall exceed $3600.00.'

"Yeas 32, nays none."

This is followed by the names of the Senators voting.

Then follows the report of the standing committee on enrolled bills: "That said committee in session has compared the following ·enrolled bill (S. 183) with the engrossed bill, respectively, and finds same correctly enrolled."

The act as approved by the Governor and now on file in the office of the secretary of state contains at the end of section 1 the language of the Swift Amendment fixing the salary of the general manager of the State Docks Commission at $6,000, and limiting the salary of any other employee to $3,600.

1. It would undoubtedly be. a fortunate thing if legislators would adopt that high ideal of statesmanship which has been formulated in the following language: "Few laws, plainly written, easily understood and obviously constitutional." But the Legislature, except as restrained by the Constitution, is unlimited in its power to enact laws in any form or language it sees fit. Any act of the Legislature, therefore, that is in the form and has had the consideration and has been passed in accordance with the limits and rules prescribed by the state Constitution and is not prohibited by the federal Constitution, is valid law and the courts must so pronounce it and enforce it, and it would be highly improper for the courts to criticize it or question the wisdom of its enactment.

■ 2. Under our system of government, the Legislature "holds the purse strings"; no money belonging to the state can be expended for any purpose without its consent, express or implied, and that consent can only be given by statutes enacted by it within the limits and in accordance with the rules set forth in the Constitution. It has always been the policy of the state, with very few minor exceptions, to compensate its officers and servants for their services. The only salary or compensation fixed or limited in amount by the Constitution is that of the legislators themselves (Const. 1901, § 49). The Legislature, therefore, with the single exception of their own pay, has the power and is charged with the duty of enacting laws fixing the pay, salary, or compensation of all others who serve the state. "To the end that it may be a government of laws and not of men," it was set forth in the Constitution (section 42), which is our organic law, that the three departments of the government, legislative, judicial, and executive, should be "distinct" and "separate," and further to carry out the idea of the dignity and independence due to the judicial and executive officers of the state, section 150 provides that: "Justices of the supreme court, chancellors, and the judges of the circuit courts and other courts of record, except probate courts, shall, at stated times, receive for their services a compensation which shall not be diminished during their official terms." And section 118 provides: "The governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, and commissioner of agriculture and industries, shall receive compensation to be fixed by law, which shall not be increased or diminished during the term for which they shall have been elected."

Section 167 provides for a solicitor for each judicial circuit and provides "and he shall receive no other compensation than a salary, to be prescribed by law, which shall not be increased during the term for which he was elected." And section 281 is as follows: "The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed."

■■ 3. The limitations in the sections of the Constitution above quoted do not in any way prevent the Legislature, in any proper manner it sees fit and at any time, from passing a law or laws either increasing or diminishing the pay, salaries, or compensation of any officer or employee of the state. With a proper subject clearly expressed in the title of the act, we know of no reason why it could not fix in one act the salaries and compensation of all the officers and employees of the state or any department thereof, or any one or any number of the officers and employees of the state or any department thereof. The limits set forth in said sections would in no sense impair the validity of such an act. They would only affect the date at which the various provisions of the law would go into effect. It was necessary to fix different effective dates as, otherwise, the act would by virtue of law have, of itself, been an attempt to

put all its provisions into effect from and after its approval by the Governor. Montgomery Traction Co. v. Knabe, 158 Ala. 461, 48 So. 501. These constitutional provisions must be read into every enactment, and such an enactment, unless otherwise expressed in the act itself, would go into effect at once or at such times as prescribed by the act as to all officers and employees not protected by the above sections of the Constitution, and as to the officers and employees named in said sections it would not go into effect during the term for which they had been elected but would apply to their successors or to them if and when elected to succeed themselves.

"The Legislature, by exception or proviso, may suspend the operation or going into effect of an entire act or of any portion until a future date, or until the happening of a future contingency, and there is no constitutional objection to a proviso or exception in a general statute fixing different dates in the future at which it shall become effective in the repeal of other laws, as by providing the repeal of one statute to take effect at a given date, and the repeal of another statute at another, or even by providing a repeal of the same statute to take effect at one date, and a part at another." State ex rel. Gaston v. Black, 199 Ala. 321, 74 So. 387.

■■■ 4. The act under consideration sought to deal with the salaries and compensation of many officers and employees, some of whom at the time of the enactment were protected against diminution of their salaries by the Constitution, and others who were not. The act as passed, by virtue of section 5 thereof, sought to put the same in effect as to officers and employees not protected on the first day of the month succeeding its adoption, and as to those protected by the Constitution it postponed the provisions of the act until such times as a constitutional amendment should be ratified by the people suspending the provisions of the Constitution in that regard. In making these different provisions, however, it did not offend section 45 of the Constitution by embracing more than one subject in the act. The one main, comprehensive subject of the law was salaries and compensation of certain officers and employees. The act nowhere deals with anything but salaries and compensation and matters pertaining thereto, and the mere fact that the Legislature was inhibited from giving an immediate effect to the reduction in salaries of some of the officers affected, while as to others there was no such inhibition, did not make the subject of the law more than one.

5. The subject of the law, as has many times been held in numerous cases, may include numerous minor subjects provided such minor subjects relate to, are germane to, and have a mutual connection with the subject proper. The subject proper of this act is salaries, pay, and compensation, which are synonymous, and the pay of each one of the various offices and officers, employments and employees, had a mutual connection with the subject proper or general comprehensive subject of salaries—the fixing thereof and their application to the many persons affected by the law. The fact that heretofore the Legislature of Alabama, by various single enactments and separate Code sections, has fixed the salaries of each individual officer or office in a rather systematic manner, does not make it compulsory under the Constitution to always follow the same plan, nor is there any provision requiring the Legislature to so classify each office or employment as to make the salary of each a distinctive subject. Pay and salary are common attributes of all offices and employments. In practically every act creating a new office, board, or commission, the duties of the incumbent and his pay were both set out in the law. No one has ever contended that such acts contain one subject of duties and another subject of compensation. In the acts creating boards and commissions practically all of them prescribe a different salary for the president than that for the subordinate members. No one has ever contended that these unequal salaries made the act double or multifarious as to subject. A careful reading of all the authorities cited by counsel on both sides in their briefs upholds our holdings on the point now being considered.

■ 6. It has also been suggested that the subject of the act was not clearly expressed in the title for the reason that the title to the act in its last clause, "provide when the provisions of this Act shall become effective," was misleading and deceptive, in that while under the authorities it was wholly unnecessary to mention the effective date, that by so mentioning the effective date it misled the Legislature, by failing to inform its members or others by a reading of the title that constitutionally protected officers would be affected by the act, nor would the members of the Legislature or others have any notice that the provisions of the act would go into effect conditionally upon the adoption of an amendment to the Constitution.

We are not unmindful of the rulings in Ex parte Pollard, 40 Ala. 77; Lindsay v. U. S. Sav. & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L. R. A. 783; Pillans v. Hancock, 203 Ala. 570, 84 So. 757; Ex parte State ex rel. Davis, Attorney General, 210 Ala. 662, 99 So. 65; Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696; Stein v. Leeper, 78 Ala. 517; Wallace v. Ball, 205 Ala. 623, 88 So. 442; Barrington v. Barrington, 200 Ala. 315, 76 So. 81; First Nat. Bank of Evergreen v. Hagood, Tax Assessor, 206 Ala. 308, 89 So. 497; and Morgan v. State, 81 Ala. 72, 1 So. 472, and have given all these

cases very serious consideration. A majority of the court is unable to find in those decisions, strong as they are on the points treated, anything that would indicate that the expression "to provide when the provisions of this act shall go into effect" was misleading to any one. In the opinion of the majority, the case of Wallace v. Ball, 205 Ala. 623, 88 So. 442, is, when properly considered, authority for our position. That case is based upon the proposition that the legislators and all others knew that legislation generally would act in a prospective manner and that a title to an act which did not express the idea of a retrospective provision in the act would be deceiving in a case where the body of the act dealt with retrospective matters. In the act here under consideration, legislators as well as all others knew that the Legislature could propose and the people adopt an amendment to the Constitution which would put the act into effect at such time as the amendment might authorize.

■ 7. The contention is made that the title of the Lapsley-Lusk Act (Gen. Acts 1933 [Ex. Sess.] p. 124) is insufficient, thereby violating section 45 of the Constitution, because the words "certain officers or employees of the State of Alabama or any department thereof" are indefinite, in that they do not designate the particular officers or employees whose salaries are "regulated, fixed or limited." To this contention we cannot agree. In Falconer v. Robinson, 46 Ala. 340, the title to the act was "An act to authorize the governor to fill vacancies in certain county offices." An attack was made upon the bill, as here, that the title thereof did not conform to the then section of the Constitution, now section 45. In answer to the contention of appellant the Supreme Court said: "But, it is said, you can not tell by this title what particular county offices are to be filled by him [the governor]. This is true, but the title is not the place for that to be expressed; that is a part of the matter and substance of the law, and the body of the law, and not the title, is the appropriate place to express it."

■ 8. The next insistence is that the word "certain" in the title to the Lapsley-Lusk Act was intended to limit its operation to some of the officers and employees and not to all of them, while the body of the act deals with the salaries or compensation of all officers and employees of the state or any department thereof. In this the appellee is mistaken. The body of the act specifically exempts from its operation all officers and employees not receiving more than $1,200 per annum. It is our opinion that the word "certain" as used in the title was appropriately chosen.

Our attention has been called to the case of Glenn v. Lynn, 89 Ala. 608, 7 So. 924. The title in that case was "An act to establish a separate school-district, to be known as the 'Peabody School-District,' in Russell County, Alabama, and for the appointment of a board of trustees for said school-district, with certain powers and privileges." Acts 1882–83, p. 342. Section 12 of the act provides that no license for the sale of spiritous liquors within said school district shall be granted to any person without the recommendation of the board of trustees as to his moral fitness. The court held that section 12 was not germane to the title, and therefore void. "Certain powers and privileges" were in that case supposed to extend rather than narrow the main subject of establishing a school district. The court held that the phrase added to the title, like the phrase "for other purposes," did not broaden the title sufficiently to apply to prohibition in the school district. The case in no sense modified or overrules Falconer v. Robinson, supra.

Falconer v. Robinson, supra, is fully supported by Henderson v. State, 137 Ind. 552, 36 N. E. 257, 24 L. R. A. 469. By common practice in Alabama titles reading almost in exact language with the title of the act have been used in acts increasing salaries of officers and employees. See Gen. Acts 1923, p. 789; Gen. Acts 1919, p. 1006; Gen. Acts 1907, p. 130.

■ 9. The appellee again bases his right to the writ of mandamus upon the ground that section 6 of the Lapsley-Lusk Act (Gen. Acts 1933 [Ex. Sess.] p. 124) is unconstitutional and void, in that it violates that part of section 45 of the Constitution providing as follows: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length." The contention of the appellee is that since section 6 of the Lapsley-Lusk Act fixes the salary or compensation which may be paid to any officer or employee of any department, board, or commission of the state, whose salary or compensation was not otherwise fixed by said act, at a sum not in excess of 70 per cent. of twelve times the salary paid such officer or employee for the month of September, 1932, recourse must be had to other statutes, and even ·to the records of the several departments, boards, and commissions of the state to ascertain the amount of salary that may be paid to such an officer or employee; that the act in effect amends or extends many other acts of the Legislature without complying with the foregoing constitutional requirements.

In Ex parte Pollard, 40 Ala. 77, at page 100, the Supreme Court clearly stated the purposes of this provision of the Constitution. It was there said: "It was never in-

tended by the constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the constitution." To the same effect, see Tuskaloosa Bridge Co. v. Olmstead, 41 Ala. 9, at page 19; State ex rel. v. Rogers, 107 Ala. 444, 19 So. 909, 32 L. R. A. 520; Cobb et al. v. Vary, 120 Ala. 263, 24 So. 442.

In the case of State ex rel. Terry v. Lanier, 197 Ala. 1, at page 3, 72 So. 320, 321, it was held: "It is not necessary, in order to avoid a conflict with this article of the Constitution, to re-enact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution, or the mischief intended to be remedied. By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute; but the enforcement of the right or duty and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the state. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the act, but merely for the formal execution of the law."

The case of Sisk v. Cargile et al., 138 Ala. 164, 35 So. 114, 115, involved the constitutionality of a statute entitled: "An act to provide for the payment of the principal and interest of certain bonds to be issued under 'An act to authorize Jackson county to build macadamized roads and bridges, and to issue bonds of the county to aid in the construction and building thereof,' approved December 7, 1898, and acts amendatory thereto." Justice Haralson, speaking for the court, said: "The act in question is original in form, complete and intelligible in itself. It simply provides, by a special levy of taxes, as necessity therefor arises, additional means to pay the bonds authorized by an original act, passed in 1898 for the construction of public macadamized roads in Jackson county. All other provisions of this special act are merely administrative, and do not affect its validity. That it does not offend section 45 of the Constitution, prohibiting the amendment of an existing law

by reference to its title only, is fully settled by former decisions of this court."

It is well established, therefore, by decisions of this court, that if the law in itself is complete and intelligible and original in form, it does not fall within the meaning and spirit of section 45 of the Constitution, although resort in the execution of its provisions must be had to independent sources, including other statutes, or records of commissions or boards. Cases supra.

The appellee does not contend that section 6 of the Lapsley-Lusk Act is anything other than an amendment by implication. In the case of Hayes v. State, 221 Ala. 389, at page 390, 128 So. 776, 777, Justice Gardner, speaking for the Supreme Court, said: "In construction of this provision of said section 45 of the Constitution it is settled that statutes amendatory of others by implication only are not within its influence."

We therefore hold that the provision of the act here assailed is original and not amendatory in form, and the same does not violate that part of section 45 of the Constitution mentioned above.

■ 10. Another proposition insisted upon is that the bill, as enrolled, signed by the President of the Senate, the Speaker of the House, and approved by the Governor, is not the act adopted according to the rules of section 64 of the Constitution, in that the Swift Amendment proposed in the House of Representatives is not shown by the journal of that house to have been adopted in the house by a yea and nay vote, nor the names of the members voting thereon, and, further, that in disregard of said section 64, the Swift Amendment was not concurred in by the Senate. If this be true, then the whole act must fall, because the act as passed was never approved by the Governor. Jones v. Hutchinson, 43 Ala. 721; King Lumber Co. v. Crow, 155 Ala. 504, 46 So. 646, 130 Am. St. Rep. 65.

The inquiry is: Does the House Journal show that the Swift Amendment was adopted in the House by a yea and nay record vote? We think it does. It is true that the House Journal fails to show that the Swift Amendment, regulating the salaries and compensation of employees of the State Docks Commission, was voted on separately by yeas and nays, but the House Journal indicates that the Swift Amendment was an amendment to an amendment, namely, the substitute offered by Mr. Harrison, and the House Journal shows that the Harrison substitute "as amended" was adopted in the House by a record yea and nay vote; the names of the members voting for and against the same being spread at length upon the House Journal. McGehee v. State, 199 Ala. 287, 74 So. 374. "Notwithstanding a constitutional requirement that no amendment

shall be adopted except by a majority of the house wherein the same is offered, or unless the names of those voting for or against the same shall be entered at length on the journal of the house in which the same is adopted, it has been held that amendments to a bill may be voted on in their entirety although separately offered or reported, and when so adopted they constitute a single amendment." 59 C. J. 559, § 70, citing McGehee v. State, supra; State v. Pitts, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79.

11. Section 64 also demands: "No amendment to bills by one house shall be concurred in by the other, unless a vote be taken by yeas and nays, and the names of the members voting for and against the same be recorded at length on the journal." This part of the section requires the journal of the other house to show only a concurrence in the amendment and not a vote on the amended bill in its entirety. Brandon v. Askew, 172 Ala. 160, 54 So. 605. See, also, Jackson v. State, 171 Ala. 38, 55 So. 118. There are two ways by which one house can concur in an amendment adopted by the other: One by yea and nay vote of concurrence; the other by adopting the report of a conference committee by yea and nay vote.

The point turns upon whether the proceedings in the Senate on the thirtieth day of the session, taken in connection with the message received on that day from the House, sufficiently show a concurrence in the Swift Amendment. The message from the House simply says: "The House has amended as therein shown and as amended has passed S. 183 (followed by the title of the Harrison substitute) and returns same herewith to the Senate."

The Senate Journal then shows:

"House Message.

"On motion of Mr. Lapsley, the Senate concurred in the following amendment (singular, not plural) by the House to S. B. 183, the title of which is set out in the foregoing message from the House, to-wit."

Then follows an exact copy of the Harrison substitute as shown by the Journal of the House, down to and including section 10 thereof; then follows, without any other language, the following words:

"Amend substitute by adding at end of list of employees of Forestry Department the following:

" 'Land Clerk, $1800.00.'

"An amendment of the Harrison substitute for Senate Bill 183.

"Amend Section 1 of the substitute for Senate Bill 183 as follows: By inserting between line 24 and line 25 on page 11 of said substitute as printed the following lines:

" 'Assistant engineer, $2400.00.

" 'Assistant engineer, $1980.00.

" 'Assistant engineer, $1980.00.

" 'Assistant engineer, $1500.00.'

"Amend the substitute for S. B. 183 by adding to Section 1: 'The salaries of the officers and employees of the State Docks Commission shall be as follows:

" 'General Manager, $6,000.00.

" 'The salary of no other employee shall exceed $3600.00.' "

To analyze the argument of appellee, it is that the Senate concurred in the Harrison substitute, but did not concur in the Swift Amendment, with possibly the other amendments to the Harrison substitute.

Was the Swift Amendment concurred in by the Senate? If so, the act as approved by the Governor was the act passed by both houses of the Legislature; if not, the whole bill fails. Authorities, supra. Section 64 does not prescribe in what form the other house must concur. Its only requirement is that "a vote be taken by yeas and nays, and the names of the members voting for and against the same be recorded at length on the journal." It was not required by section 64 that the House amendment be spread at length on the Journal of the Senate. State ex rel. Brown v. Porter, 145 Ala. 541, 40 So. 144. The amendment must affirmatively appear to have been spread at length on the journal of the house in which it originated, but need not be spread at length on the journal of the concurring house. Board of Revenue of Jefferson County v. Crow, 141 Ala. 126, 37 So. 469. Nevertheless, both the Harrison substitute and the Swift Amendment, though the latter is not so designated, were spread upon the Senate Journal, as well as other amendments to the Harrison substitute. Having been spread on the Journal of the Senate, the court has a right to look to the same in connection with the message from the House and the motion made by Senator Lapsley to concur in the same, and while it is true that in the language of the motion made by Senator Lapsley the word "amendment" is used and not the plural "amendments," we think that the whole record of the journal of the Senate shows that the Senate concurred in the Harrison amendment as amended in the House by the Swift Amendment. It was treated by the Senate as it had been by the House as one amendment.

12. It is contended that the bill was so altered or amended on its passage as to change its original purpose, in violation of section 61 of the Constitution, which provides: "No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either House as to change its original purpose."

The title to the original bill is: "An act to fix the salaries of certain officers and em-

ployees of the state or any department thereof and to provide how the same shall be paid; to provide that the salaries fixed by this act shall be in lieu of the salaries now provided by law; and to provide for the repeal of all laws or parts of laws in conflict with the provisions of this act; and to provide for the effective date of this act."

The title to the act as finally passed is given above.

The "purpose" of the bill contemplated in section 61 of the Constitution is the general purpose of the bill and not the mere details through which and by which that purpose is manifested and effectuated. The amendments were merely extensions and not changes of purpose. Stein v. Leeper, 78 Ala. 517; Hall v. Steele. 82 Ala. 562, 2 So. 650; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695. In our opinion, the purpose of the bill was never changed throughout its passage in either house.

Our conclusion is, therefore, that Senate Bill 183, known generally as the Lapsley-Lusk-Harrison Bill, is a valid law and is not unconstitutional for any reason above considered.

■ 13. Appellee Jones was not protected against reduction in salary by anything in the state or federal Constitution. Stevens v. Thames, 204 Ala. 487, 86 So. 77; State ex rel. Gaston v. Black, supra. It is easy to separate those officers and employees referred to in the act who were not protected against reduction of salaries by the Constitution from those who were protected. In this case we are not called upon, nor would it be proper for us, to pass upon the question as to whether or not that part of the act referring to constitutionally protected officers is valid or invalid, nor are we called upon to pass upon the validity of the amendment to the Constitution known as the Sparks Amendment (Gen. Acts 1933 [Ex. Sess.] p. 46), as the Sparks Amendment has no relation whatever to the office or employment of appellee Jones.

■ 14. We have been invited by both parties in this case, in view of public interest involved, to extend our opinion in this case to cover the whole act here. under consideration as well as the Sparks Amendment recently adopted. We do not think it proper to do so, but are of the opinion that this special court, appointed to consider and determine this cause alone, should confine itself to the rights of appellee under the petition for mandamus filed by him in the court below.

As to the applicability of appellee's rights under section 93 of the Constitution as amended, known as the Mobile Seaport Amendment, this question has already been decided adversely to appellee's contention by the Supreme Court of Alabama in the case of State Docks Commission et al. v. State ex rel. J. L. Cummings, ante, p. 414, 150 So. 345.

Our conclusion therefore is that the learned court below erred in the judgment rendered in said cause and that the same must be reversed and remanded for further proceedings.

GODBOLD, RICHARDSON, RUSHTON, and SIMS, Special Judges, concurring.

JOHNSTON, Special Judge (dissenting).

I concur in the majority opinion in everything other than the holding that the Lapsley-Lusk Act (Gen. Acts 1933 [Ex. Sess.] p. 124) does not violate that part of section 45 of the Constitution which requires that every law shall contain but one subject which shall be clearly expressed in the title. In justice to the opinion that I entertain on that subject, I have decided to record my views. This of necessity, also, requires me to consider the Sparks Amendment to the Constitution of Alabama.

The appellee contends that it was beyond the power of the people through the Sparks Amendment (Gen. Acts 1933 [Ex. Sess.] p. 46) to suspend the operation of sections 150 and 281 of the Constitution. No authorities are cited to uphold this contention, neither is the argument persuasive. The people adopted the Constitution of 1901. They are the source and fountainhead thereof, and it would indeed be a paradox to say that the body politic that created the Constitution did not have the power to change it at will. Of course, no change or amendment may contravene the Constitution of the United States.

The Tenth Amendment to the Constitution of the United States specifically provides: "Powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." In construing this section, the Supreme Court of the United States, in the case of The Collector v. Day, 11 Wall. 113, 124, 20 L. Ed. 122, said: "It is a familiar rule of construction of the Constitution of the Union, that the sovereign powers vested in the State governments by their respective constitutions, remained unaltered and unimpaired, except so far as they were granted to the government of the United States. That the intention of the framers of the Constitution in this respect might not be misunderstood, this rule of interpretation is expressly declared in the tenth article of the amendments, namely: 'The powers not delegated to the United States are reserved to the States respectively, or, to the people.' "

Section 2 under article 1 of our Declaration of Rights provides: "That all political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit; and that, therefore, they have at all times an inalienable and indefeasible right to change their form of government in such manner as they may deem expedient."

While it may be true, as contended by the appellee, that constitutions and their provisions are usually of a permanent character, yet there can be no legitimate reason advanced why the people may not elect to adopt temporary provisions or to suspend, for a period of time, permanent ones. In fact, this was done by the framers of the Constitution of the United States. Under article 1, § 8, of that Constitution, Congress was granted the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." This provision granted the power to Congress to regulate immigration and the importation of slaves (see Groves et al. v. Slaughter, 15 Pet. 449, 513, 10 L. Ed. 800), but the power granted under this section to regulate or forbid immigration or the importation of slaves was suspended until 1808 by section 9 of article 1, providing that: "The migration or importation of such persons as any of the states now existing shall think proper to admit, shall not be prohibited by the congress prior to the year one thousand eight hundred and eight, but a tax or duty may be imposed on such importation, not exceeding ten dollars for each person."

Again, in our own Constitution, section 216 provides, among other things, that: "The city of Mobile * * * may * * * levy a tax not to exceed three-fourths of one per centum to pay the debt existing on the sixth day of December, eighteen hundred and seventy-five, with interest thereon, or any renewal of such debt." This provision operated only temporarily.

"The people of the State * * * can amend or revise their existing constitution or establish a new one, in such manner as they may think fit under the limitations imposed by the Constitution and laws of the United States." Scruggs v. Mayor, etc., of Huntsville, 45 Ala. 220, 223.

Of course, the mandatory requirements of sections 284 and 285, or of 286, must be complied with before an amendment may be validly adopted. Hooper v. State, 206 Ala. 371, 89 So. 593; Johnson v. Craft, 205 Ala. 386, 87 So. 375.

The appellee further contends that the Sparks Amendment to the Constitution of Alabama (Gen. Acts 1933 [Ex. Sess.] p. 46) was never legally submitted to the people of the state for the reason that the Legislature never appointed a day for the holding of the election for the voting thereon, as required by section 284 of the Constitution. The bill proposing the amendment ordered an election thereon to be held by the qualified electors of the state on the first Tuesday after the expiration of three months from the final adjournment of the session of the Legislature at which the amendment was proposed. It is argued that, since the day of final adjournment of the Legislature was uncertain, the first Tuesday after the expiration of three months from the date of final adjournment of such session was likewise uncertain. To this objection we cannot agree. The law regards that as certain which is capable of being ascertained and definitely fixed. Mobile & O. R. Co. v. Tennessee, 153 U. S. 486, 497, 14 S. Ct. 968, 38 L. Ed. 793; U. S. v. Smith, 18 U. S. (5 Wheat.) 153, 159, 5 L. Ed. 57.

The language used in the bill proposing the Sparks Amendment substantially follows the language of the Constitution. There is a very good reason why the Legislature should not be required to designate a specific calendar day. It is beyond human foresight to determine in every instance the time when a session of the Legislature may adjourn. If a bill proposing an amendment is passed by the Legislature, and a specific calendar day appointed, the exigencies of the Legislature might, in the course of events, result in that body adjourning on a date within three months of the day appointed, thereby violating section 284 of the Constitution.

It might also be observed that section 194½ of the Constitution, known as the Poll Tax Exemption Amendment (Acts 1921, p. 4), and article 20 of the Constitution, known as the Road Bond Issue Amendment (Acts 1921, p. 35), were proposed by bills appointing the date of the election on each, as was done in this case. Millions of dollars of bonds were issued under the latter amendment; property rights have vested, and we can see no valid reason why such method of appointment is not sufficient. It is my opinion, therefore, that the Sparks Amendment is now a part of the Constitution of Alabama.

Assuming for the moment that the Lapsley-Lusk Act contains but one subject, is it clearly expressed in the title as required by section 45? The objects of this section of the Constitution have been many times stated. In Ex parte Pollard, 40 Ala. 77, 99 (which was quoted with approval by Mr. Justice Brickell in the case of State v. Sayre, 118 Ala. 36, 24 So. 89), Mr. Justice Walker stated the following to guide and assist in the construction of this clause of the Constitution, viz.: "The object of the constitutional provision was to prevent deception by the inclusion in a bill of matter incongruous with the title."

Mr. Justice Brickell, in the case of Lindsay v. U. S. Sav. & Loan Ass'n, 120 Ala. 156, 172, 24 So. 171, 176, 42 L. R. A. 783, approved the statement of Judge Cooley that there were three purposes for this constitutional requirement, which are as follows:

"First, to prevent 'hodgepodge' or 'logrolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked, and carelessly and unintention-

ally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

The rules thus defined in the above cases were applied in the case of Pillans et al. v. Hancock et al., 203 Ala. 570, 572, 84 So. 757, 759, where Mr. Chief Justice Anderson, speaking for the Supreme Court, said: "While we have heretofore held that this constitutional provision is mandatory, it should be liberally construed in favor of legislative enactments when they are reasonably cognate or germane to the title; but when the title is so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment, it is insufficient."

To the same effect, see Ex parte State ex rel. Davis, Attorney General, 210 Ala. 662, 664, 99 So. 65; Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696.

We will, therefore, examine the title to the Lapsley-Lusk Act to see if the title is deceptive and misleading as to section 5 thereof, and whether it is incongruous therewith.

"Under our constitution, the title is regarded as an essential part of the law, having a specific object and office—to control the subject of the enactment, and to restrict its provisions and details to such matters as are pertinent and germane to the single subject expressed in the title. * * * One of the main purposes of the clause is to prevent entrapping or deceiving the legislature by alluring or misleading titles." Stein v. Leeper, 78 Ala. 517.

Section 5 of the Lapsley-Lusk Act (Gen. Acts 1933 [Ex. Sess.] pp. 124, 129) provides as follows: "Section 5. As to all salaries herein provided for officers or employees not elected or appointed for any term of office and which salaries are subject to reduction now this Act shall become effective on and after the first day of the month succeeding the approval of this Act; and as to all other salaries herein, this Act shall take effect on the first day of the month next succeeding the ratification of any Constitutional Amendment removing or suspending Constitutional restriction or limitations upon decreasing or diminishing the salary, fees or compensation of any officer, officers or employees during the term for which they shall have been elected or appointed."

The title to the Lapsley-Lusk Act is as follows: "An Act to fix, limit or regulate the salaries and compensation of certain officers and employees of the State or any department thereof; to provide how the same shall be payable; and to provide for the repeal of all laws or parts of laws in conflict with the provisions of this Act; and to provide when the provisions of this Act shall become effective."

Is section 5 of the act clearly expressed in the title? If not, does the title mislead and deceive as to the body of the act?

In the case of Ballentyne v. Wickersham, 75 Ala. 533, Mr. Justice Stone, speaking to the question, said: "There was a second abuse, against which this provision was levelled. The subject of the act 'shall be clearly expressed in the title.' The intention of this was, that the title of the act or bill should inform the members of the legislature, and perhaps the public, of the subject on which the former were invited to vote and legislate. Matters foreign to the main objects of the bill had sometimes found their way into bills—surreptitiously, at times, it was charged—and thus the members were induced to vote for measures in ignorance of what they were doing."

This court, in a number of decisions, has held that if the title of the act is misleading and deceptive of the body of the act, then section 45 of the Constitution is violated, since the subject is not then clearly expressed in the title.

In the case of Wallace v. Ball, 205 Ala. 623, 88 So. 442, 444, the Supreme Court held an act to be violative of section 45 where the title indicated a prospective operation while the body of the act gave it a *retrospective* as well as a *prospective* operation. In the body of the act was found a provision that it should apply to bonds already authorized to be issued, as well as bonds thereafter authorized. Mr. Justice Miller, speaking for the court, said:

"This act, in its body, makes it apply to bonds heretofore and hereafter authorized to be issued. It is prospective and retrospective as to the bonds and the interest and the discount thereon and the authority to issue them. The title of the act does not refer clearly to its retrospective and discount intent and purpose. In this it is strikingly misleading, and calculated to spring a 'surprise on the Legislature.' It looks like the design of the act is to cure ills in or care for bonds of the past rather than to provide for the future. The title looks to the future, and not to the past; but the body has oil for the sores of the past as well as the ills of the future. 'Prospective laws are the rule, and retrospective laws are the exception.' If the body of an act contains both, the title should clearly contain both.

"Does not section 45 of the Constitution condemn and declare void that part of this act which attempts to regulate the sale below par of, and to increase the interest on bonds heretofore authorized by the voters of a county to be issued? We think so; this heretofore retrospective, past, and discount

subject not being clearly expressed in its title." Lindsay v. U. S. Sav. & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L. R. A. 783; Barrington v. Barrington, 200 Ala. 315, 76 So. 81.

The case of Lindsay v. U. S. Sav. & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L. R. A. 783, also involved a misleading and deceptive title. The title to the act indicated *prospective* operation only, while the body of the act indicated also a retrospective operation. It was held by the court to violate section 45 of the Constitution.

In the case of First National Bank of Evergreen v. Hagood, Tax Assessor, 206 Ala. 308, 89 So. 497, the Supreme Court struck down an act of the Legislature as violative of section 45 of the Constitution where the title provided that the board of commissioners of Conecuh county were *authorized* to pay certain sums out of the general fund to the tax assessor; but the body of the act *required* the board of commissioners to pay said sums. The court said, in distinguishing between the title and the body of the act, as follows: "One would leave it to the discretion of the commissioners' court to pay the salary in question; the other would impose the duty to pay as a command or matter of compulsion —would leave no discretion. How, then, can it be said that the subject of this act is clearly expressed in the title? We think the necessary result is that in the frame of this act section 45 of the Constitution is not observed, and we have no discretion to overlook the requirement of the fundamental law; no right to mitigate the effect of its plain language."

In the case of Miller v. Jones, 80 Ala. 89, the Supreme Court struck down an act where the title provided for the *regulation of* the *sale of, giving away* or *otherwise disposing of*, spirituous liquors, while the body of the act *prohibited* the sale thereof. The court held: " 'Regulate' and 'prohibit' have different and distinct meanings, whether understood in their ordinary and common signification, or as defined by the courts in construing statutes. Power granted to a municipal corporation to grant licenses to retailers of liquors, and to regulate them, does not confer power to prohibit, either directly or by a prohibitory charge for a license."

The same thing was held in the cases of Morgan v. State, 81 Ala. 72, 1 So. 472, and Yahn v. Merritt, 117 Ala. 485, 23 So. 71.

In the case of State v. Davis, 130 Ala. 148, 30. So. 344, 89 Am. St. Rep. 23, the Supreme Court struck down an act of the Legislature where the title was "to prohibit the sale of spirituous, vinous, and malt liquors in Dallas county, outside the corporate limits and police jurisdiction," but the body of the act prohibited the *giving away* or otherwise disposing of spirituous, vinous, or malt liquors, intoxicating bitters, or beverages, or drinks or fruit preserved in alcohol. Two objections were made to the act: (1) The title prohibited the sale; the body of the act also prohibited the giving away. (2) The title of the act treated of spirituous, vinous, or malt liquors; the body of the act also treated of intoxicating bitters, beverages or drinks, or fruits preserved in alcohol.

In the case of State ex rel. Bassett v. Nelson, 210 Ala. 663, 98 So. 715, the Supreme Court held that the Act of August 28, 1923 (Loc. Acts 1923, p. 121), entitled "An Act to alter or rearrange the boundaries of the City of Decatur," was unconstitutional and void under section 45 of the Constitution. There was not clearly expressed in the title part of the subject-matter of the act which disincorporated the city of Albany and consolidated the territory thereof with that of Decatur.

In the case of State ex rel. Coxwell v. Mims, 197 Ala. 356, 72 So. 540, the Supreme Court held void an act where the title was to provide for the regulation and pay of state witnesses before the grand jury of Monroe county, while the body of the act also sought to regulate the fees of the sheriff and court clerks of Monroe county.

The case of Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696, involved an act entitled: "An act to alter and rearrange the boundary lines of the city of Mobile in the state of Alabama, *so as to include within the corporate limits of said city certain territory not included therein.*" The body of the act, however, *excluded* certain territory from the corporate limits of the. city as they existed at the time of the adoption of the act. The court held that the subject of the act was not clearly expressed in the title.

I have cited these cases above because in each instance not only was the subject of the act not clearly expressed in the title, but the title itself was deceptive and misleading as to what was contained in the body of the act. From the foregoing decisions it appears. that, where the title of an act indicates a distinct subject or thought, while the body of the act expresses a contrary thought, the act is void, as it is misleading and delusive to a member of the Legislature seeking to ascertain its contents from the title. Let us then consider the title to the Lapsley-Lusk Act. It is as follows: "An Act to fix, limit or regulate the salaries and compensation of certain officers and employees of the State or any department thereof * * * and to. provide when the provisions of this Act shall become effective." It says, substantially,. that "this act fixes, limits and regulates the salaries and compensation of certain officers. or employees of the State or any Department thereof * * * and provides when the. provisions thereof shall become effective." Assurance of the operation of the provisions of the act at the present or some future time is the thought permeating the title. It comprehends the imperative, not the subjunctive.

It definitely says to a member of the Legislature examining the title that the salaries of certain officers and employees are hereby fixed, limited, or regulated (not contingently fixed, limited, or regulated), and that the provisions of the act are to become effective at the present or some future time. The title comprehends the absolute, not the contingent; the positive, not the conditional; the certain, not the uncertain. It neither expressly declares, nor faintly implies, that the salaries of those officers protected by sections 150 and 281, and similar provisions of the Constitution are to be fixed, limited, or regulated (that is reduced), only if a contingency or condition is met, viz., if the people of Alabama adopt the Sparks Amendment. While the time the act is to become effective is not stated, yet the title necessarily imports that at *some time* the act will become effective. There is not the slightest indication that certain provisions of the act may never become effective, due to the contingency that the people might not adopt the Sparks, or a similar, amendment.

Remembering that: "Under our constitution, the title is regarded as an essential part of the law, having a specific object and office —to control the subject of the enactment, and to restrict it," Stein v. Leeper, 78 Ala. 517, 520, let us examine the title of the act to see what it imported to a member of the Legislature reading it. He would be informed, first, that the salaries or compensation of certain officers of the state, or any department thereof, were to be fixed, limited, or regulated at some time, either upon approval of the act, or in the future; second, that such officers were those whose salaries or compensation were susceptible of legislative fixing or regulation, that is, reduction during their terms of office; or, third, he would have been informed that, if it applied to officers whose salaries were prohibited from being reduced during their terms of office, the time when the provisions of the act relating to them would become effective, would be at the expiration of their terms of office; or, fourth, he may have been informed that it applied to both classes, but that, as to the latter class, the act would not operate until the expiration of their terms of office. His logical mental reactions from reading the title would be: It must either refer to those officers or employees whose salaries or compensation may be reduced at any time, or, if it does not refer to them, then it refers to those officers protected by sections 150 and 281 and similar sections of the Constitution, but as to them the time it is to take effect is at the expiration of their terms of office. If the title imported to him that the act did not apply to those officers protected by the Constitution, or that, if it did apply to them, it would not become effective until the expirations of their terms of office, he was misled and deceived as to the body of the act. I am, therefore, of the opinion that the whole title of the act is misleading and deceptive as to the contents of the body of the act, and that the subject is not clearly expressed in the title.

The last clause in the title of the Lapsley-Lusk Act is "and to provide when the provisions of this Act shall become effective." Are the words thus used susceptible of the meaning that the time at which some of the provisions are to become effective is dependent upon a condition precedent being complied with, namely, the adoption of the Sparks, or a similar, amendment by the people of Alabama. The word "when" means "at which time." 2 Bouv. Law Dict., p. 1227; State v. Donahoe, 5 Pennewill (Del.) 278, 63 A. 643, 646.

Substituting, therefore, these words in said clause, the title reads: "and to provide *at which time* the provisions of this Act shall become effective." Does this imply that the effective date of the act is dependent upon the contingency that the people of Alabama will vote for the Sparks Amendment?

"As a general rule the words of a statute are to be taken in their ordinary and popular sense, unless it plainly appears from the context or otherwise that they were used in a different sense." Mobile Dry Docks Co. et al. v. City of Mobile, 146 Ala. 208, 40 So. 205, 208, 3 L. R. A. (N. S.) 822, 9 Ann. Cas. 1229.

Granting that the word "when" may sometimes be a word of condition, yet there is nothing in the context of the title to suggest it was used in this sense. As to those officers and employees whose salaries might be presently reduced, the word undoubtedly refers to the *time* they are to be reduced. Why should a member of the Legislature be assumed to have imported to it an additional meaning, namely, as a word of condition. If we say that a member of the Legislature, without examining the body of the act, was put on notice that the word "when" meant both "time" and "condition," then we assume that he gave to the meaning of the word an unusual one and one not justified by the context of the title. Let us use another method of testing the meaning of the title. The Governor and the Supreme Court judges are included in the Lapsley-Lusk Act. Let us carve from the title and from the act all officers and employees of the state, or any department thereof, other than the Governor and the Supreme Court judges. A title of the character of the one used in the Lapsley-Lusk Act would read as follows: "An Act to fix, limit, or regulate the salaries and compensation of the Governor and the Supreme Court Judges of the State * * * and to provide when the provisions of this Act shall become effective." Could it be successfully contended that such a title would give notice to a member of the Legislature that the provisions of the act

538

were to go into effect only upon the contingency that the Sparks Amendment was adopted by the people? Would the word "when" used in the title suggest time, or would it suggest the subjunctive or conditional? What would a member of the Legislature infer from reading such a title? He would know that the people of Alabama had guaranteed both to the Supreme Court judges, under section 150 of the Constitution, and to the Governor, under section 118, that their salaries would not be reduced during their terms of office. He would then assume that, as their salaries could not be reduced during their terms of office, the time at which the Act would become effective would be at the expiration of their terms of office. An analogous argument could be made as to all offices protected by sections 118, 150, and 281 of the Constitution. The appellant, however, contends that the time that an act is to become operative is no part of the subject of the act, within the meaning of section 45 of the Constitution, and cites the case of State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 229, 59 So. 294, 298, where Mr. Justice McClellan, speaking for the court, said: "The next insistence is that the Parks Bill contains three subjects, viz., the holding of an election, prohibition except in cities and towns, and deferring its going into effect to await future legislation. Manifestly, the mere postponement or fixing, in futuro, of the time of going into effect of an enactment is not, in any sense, a part of the subject of the act within section 45 of the Constitution."

"It is a maxim, not to be disregarded," said Chief Justice Marshall in the case of Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257, "that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Granting that, ordinarily, the time that an act is to become operative is not a part of the subject, yet it is not true that the Legislature may not so use words designating time as to qualify or restrict the subject of the act. A title may be as broad as the Legislature desires, so long as it clearly expresses the subject, or it may be restricted and qualified, in which latter event the body of the act must conform to the title, and be confined within its limits. 25 R. C. L. p. 862, § 106; p. 864, § 108. Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696; First National Bank v.

Hagood, 206 Ala. 308, 89 So. 497; Stein v. Leeper, 78 Ala. 517, 520.

If the title of the act in the Crumpton Case had stated that the act was to become effective four years *after the date of approval,* could it be successfully contended that section 17 of the Parks Act (Gen. Acts 1911, pp. 26, 31), mentioned in said case, postponing the operation of the act until legislation was enacted carrying it into effect, was valid? Again, if the title of the Lapsley-Lusk Act had used, in lieu of the words "and to provide when the provisions of this act shall become effective," the following clause, "and to provide that the provisions of this act shall become effective *two years after the date* of approval," could it be successfully contended that section 5 was clearly expressed in the title? Would the argument admit, in these two instances, that the rule stated in the Crumpton Case applied, and that, as time was no part of the subject, its inclusion in the title was mere surplusage and of no binding force?

Since the title to the Parks act, mentioned in the Crumpton Case, was silent as to the time it was to become effective, the court held that, as time was not a part of the subject, section 17 did not have to be reflected in the title. But it is a very different thing to say that a title may be silent upon a matter germane or cognate to the subject, and to say that this matter, if included in the title, may deceive and mislead without offending section 45.

In the case of Fuqua v. City of Mobile, supra, the title of the act was: "An act to alter and rearrange the boundary lines of the city of Mobile in the state of Alabama, *so as to include* within the corporate limits of said city certain territory *not included* therein." The body of the act also excluded certain territory theretofore included within the boundaries of the city of Mobile. The contention was made that the subject of the act was "to alter and rearrange the boundary lines of the City of Mobile," but Mr. Justice Gardner, in speaking to the point, said: "The title of the act is narrow and restricted. It is not an act to alter and rearrange the boundaries of Mobile, but one to so alter the boundaries as to embrace new territory, and by its language is expressly confined thereto. The language of the title is to alter the boundaries of Mobile, 'so as to include within the corporate limits' new territory; * * * we think it requires no argument to demonstrate that one reading such a title would not be led to suspect that the body of the act would be so far extended beyond the title as also to provide for an exclusion from the corporate limits a very large area then constituting a part thereof."

Undoubtedly, it was not necessary to set out in the title the words "so as to include within the corporate limits of said city certain territory not included therein," but, hav-

ing so used the same, the subject was so qualified and restricted as to make the title of the act misleading and deceptive as to the body of the act.

Again, section 17 of the Parks bill merely postponed the effective date of the act, awaiting the enactment of new legislation. Section 17 could have been omitted, and nothing would have been taken away from the bill. It is true it would have had no present field of operation, but it would not have been void. In the case at bar, if we omit section 5 of the act, clearly the act would have been unconstitutional and void as to the present salaries of those officers protected by sections 150 and 281 and similar provisions of the Constitution.

Again, there is a clear distinction between the Crumpton Case and the one at bar. Usually, the time when an act is to become operative is not a part of the subject. The rule, however, is different when time is the essence of the subject. When time is the handmaid of contingency, and contingency is dependent for its life upon the undetermined will of the people, a different rule applies. When an act is dependent for its validity and operation upon the future obliteration or suspension of a constitutional provision, then time is necessarily an integral part of the subject with which the Legislature is dealing. For instance, the Legislature could not have passed an act reducing at the present time the salaries or compensation of those officers protected by sections 150 and 281 and similar provisions of the Constitution. The terms of office of such incumbents must expire by operation of time before their salaries can be diminished. The Lapsley-Lusk Act, in effect, for the intended purposes, seeks to accelerate the expiration of the terms of those officers protected by sections 150 and 281 and similar provisions of the Constitution. It seeks to anticipate time. Time is the essence of the act, the sine qua non to its validity. I am, therefore, of the opinion that the title to the act is deceptive and delusive as to the subject-matter of the act; and hence the same does not conform to section 45 of the Constitution.

The appellee insists that the Lapsley-Lusk Act contains more than one subject, thereby violating section 45 of the Constitution. With the construction that I have placed upon the title of the Lapsley-Lusk Act as a major premise, let us see if such is the case. What constitutes the subject of an act has been the source of much litigation. To determine if an act contains two subjects, it is always of aid to see if it deals with matters distinct and independent in their inherent nature and character, or with matters treated as separate and distinct subjects of legislation by present or past legislation or judicial decision.

"The enactment, it is apparent, by its title expresses two separate, distinct, independent subjects, made separate and distinct by legislation, judicial decision, and their inherent nature and character." Builders' & Painters' Supply Co. v. Lucas & Co., 119 Ala. 202, 209, 24 So. 416, 418.

See, also, Ex parte Gayles, 108 Ala. 514, 19 So. 12; Brown v. State, 115 Ala. 74, 22 So. 458; Dowling v. City of Troy, 173 Ala. 468, 56 So. 118; Board of Rev. and Road Com'rs of Mobile County v. State, 200 Ala. 456, 76 So. 388; Black v. State, 144 Ala. 92, 40 So. 611; State ex rel. Troy v. Smith, 187 Ala. 411, 65 So. 942; Thompson v. Town of Luverne, 125 Ala. 366, 29 So. 326.

The case of Commonwealth v. Humphrey, 288 Pa. 280, 136 A. 213, 214, considers an act entitled: "An act to regulate the practice of the profession of engineering and of land surveying; creating a state board for the registration of professional engineers and land surveyors; defining its powers and duties; imposing certain duties upon the commonwealth and political subdivisions thereof in connection with public work; and providing penalties." It was held that the Legislature, itself, had treated engineers and surveyors as two separate subjects, and the court dismissed the defendant's contention that a land surveyor could well be regarded as a minor engineer, and that in several other instances learned professions had been divided into different branches by the Legislature and dealt with in the same bill. In answer to this the court said: "It is no answer to say, as defendants do, that a land surveyor can justifiably be regarded as a minor engineer, for the Legislature here designedly chose to treat him otherwise. Again, it is no answer to argue that in several other instances learned professions have been divided into different branches by the Legislature, and dealt with in a single bill, for, when these instances are examined, it will be found that in each of them the Legislature plainly treated a main subject as including minor branches," etc.

With this thought in mind, let us see if the body of the act in question has treated of subjects inherently distinct from and independent of each other, or made separate and distinct by a past or present course of legislation or judicial decision. It may be generally stated that public officers are divided into three classes:

1. Those officers created by the Constitution and protected by sections 118, 150, and 281 of the Constitution.

2. Those officers with fixed terms created by the Legislature, and also protected by section 281 of the Constitution. Franklin County v. Richardson, 202 Ala. 46, 79 So. 384.

3. Those officers of boards or commissions of the state without fixed terms and whose salaries or compensation find no protection

under Section 281 of the Constitution. State v. Sanders, 187 Ala. 79, 65 So. 378, L. R. A. 1915A, 295; Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 76 So. 422.

It may be accurately stated that the act in question divides the officers and employees mentioned above into two general classes, viz.:

(1) Those officers whose salaries and compensation may not be reduced during their terms of office. In this class salaries or compensation run as an incident to the office.

(2) Those officers and employees whose salaries or compensation may be so reduced. This class become entitled to their salaries or compensation as the result of employment, and they are not strictly public officers, though often so designated.

Do these two separate classes constitute separate, independent subjects made so by the present act and justified by the constitutional, legislative and judicial history of our state? Section 281 of the Constitution prohibits the diminishing or increasing of the salaries, fees, or compensations of any civil officer holding any civil office of profit under the state, or any county or municipality thereof, during the term for which he shall have been elected or appointed. The purpose of this provision of the Constitution has often been stated.

(1) "It was intended not only to protect the public against the evil of letting a public official use his official power and influence to augment his own salary, or the equally unjust action of an unfriendly power to cut down an official's salary because he was unpopular with the body whose duty it was to fix the salary, but to prevent also what would seem to have been implied in the spirit of the idea, that his salary should not be changed— that the matter of compensation was to remain substantially if not precisely as it was when the official was elected to the office. In this way only it was evidently thought could logrolling among officials and unjust intermeddling by unfriendly public bodies toward officials whose selection they did not approve, be prevented." James v. Barry, 138 Ky. 656, 664, 128 S. W. 1070, 1073.

(2) "It was designed to protect the individual officer against legislative oppression which might flow from party rancor, personal spleen, enmity, or grudge. These could well harass and cripple the officer by reducing his compensation during his service; while, on the other hand, party feeling, blood, or business relations might be combined in such pernicious activity in the form of strong and powerful lobbying as to sway the members of the Legislature and cause the bestowal of an unmerited increase. To obviate these conditions is the purpose of this wise constitutional provision." State v. Board of Com'rs of Sier-

ra County, 29 N. M. 209, 214, 222 P. 654, 655, 31 A. L. R. 1310.

(3) "It was to prevent persons while possessed of the prestige and influence of official power from using that power for their own advantage that the framers of our organic law ordained that salaries of public officers should not be increased during the terms of the persons holding such offices." Folk v. St. Louis, 250 Mo. 116, 135, 157 S. W. 71, 74. State v. Porter, 57 Mont. 343, 347, 188 P. 375.

See 46 C. J. p. 1021, note 22, § 254; State v. Sanders, 187 Ala. 79, 65 So. 378, L. R. A. 1915A, 295.

The judiciary of our state, as a branch of the first class, in its relation to the matter before us, requires additional consideration. Section 42 of our Constitution, like the Constitution of the United States, in distributing the powers of government, creates three distinct and separate departments, the legislative, the executive, and the judicial. The theory of such separation was noted by Aristotle, and admired by Blackstone. 1 Blackstone Comment. 69. Montesquieu declared it was essential to civil liberty. Esprit de Lois, Book 2, chapt. 6. Mr. Madison, in The Federalist, No. 47, said: "The oracle who is always consulted and cited on this subject is the celebrated Montesquieu. If he be not the authority of this invaluable precept in the science of politics, he has the merit at least of displaying and recommending it most effectively to the attention of mankind."

The Supreme Court of the United States, in a recent decision, commented upon the proven wisdom of such separation in the following language:

"Its object is basic and vital, Springer v. Government of Philippine Islands, 277 U. S. 189, 201, 48 S. Ct. 480, 72 L. Ed. 845; namely, to preclude a commingling of these essentially different powers of government in the same hands. And this object is none the less apparent and controlling because there is to be found in the Constitution an occasional specific provision conferring upon a given department certain functions, which, by their nature, would otherwise fall within the general scope of the powers of another. Such exceptions serve rather to emphasize the generally inviolate character of the plan.

"If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others— independent not in the sense that they shall not co-operate to the common end of carrying into effect the purposes of the Constitution, but in the sense that the acts of each shall never be controlled by, or subjected, directly

or indirectly, to, the coercive influence of either of the other departments. James Wilson, one of the framers of the Constitution and a justice of this court, in one of his law lectures said that the independence of each department required that its proceedings 'should be free from the remotest influence, direct or indirect, of either of the other two powers.' Andrews, the Works of James Wilson (1896), vol. 1, p. 367. And the importance of such independence was similarly recognized by Mr. Justice Story when he said that in reference to each other neither of the departments 'ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.' 1 Story on the Constitution (4th Ed.) § 530. To the same effect, The Federalist (Madison) No. 48. And see Massachusetts v. Mellon, 262 U. S. 447, 488, 43 S. Ct. 597, 67 L. Ed. 1078."

O'Donoghue v. U. S., 289 U. S. 516, 53 S. Ct. 740, 743, 77 L. Ed. 1356, decided May 29, 1933.

To make assurance doubly sure that the judiciary of our state should be independent of the remotest influence, direct or indirect, of the other two branches of our government, the framers of our Constitution inserted therein section 150 as a natural corollary to section 42. This section provides as follows: "Sec. 150. The justices of the supreme court, chancellors, and the judges of the circuit courts and other courts of record, except probate courts, shall, at stated times, receive for their services a compensation which shall not be diminished during their official terms; they shall receive no fees or perquisites, nor hold any office, except judicial offices, of profit or trust under this state or the United States, or any other government, during the term for which they have been elected or appointed."

The logical relation of similar provisions in the Federal Constitution, the obvious necessity for their creation, and the political and ethical philosophy underlying them, also find a most admirable treatment by the United States Supreme Court in the following words, viz.:

"The anxiety of the framers of the Constitution to preserve the independence especially of the judicial department is manifested by the provision now under review, forbidding the diminution of the compensation of the judges of courts exercising the judicial power of the United States. This requirement was foreshadowed, and its vital character attested, by the Declaration of Independence, which, among the injuries and usurpations recited against the King of Great Britain, declared that he had 'made judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries.'

"In framing the Constitution, therefore, the power to diminish the compensation of the federal judges was explicitly denied, in order, inter alia, that their judgment or action might never be swayed in the slightest degree by the temptation to cultivate the favor or avoid the displeasure of that department which, as master of the purse, would otherwise hold the power to reduce their means of support. The high importance of the provision, as the contemporary history shows, was definitely pointed out by the leading statesmen of the time. Thus, in The Federalist, No. 78, Hamilton said: 'The complete independence of the courts of justice is peculiarly essential in a limited Constitution.' And in No. 79: 'Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support. * * * In the general course of human nature, a power over a man's subsistence amounts to a power over his will.' * * *

"Chief Justice Marshall, in the course of the debates of the Virginia State Convention of 1829–1830 (pp. 616, 619), used the following strong and frequently quoted language:

" 'The Judicial Department comes home in its effects to every man's fireside; it passes on his property, his reputation, his life, his all. Is it not, to the last degree important, that he should be rendered perfectly and completely independent, with nothing to influence or control him but God and his conscience? * * * I have always thought, from my earliest youth till now, that the greatest scourge an angry Heaven ever inflicted upon an ungrateful and a sinning people, was an ignorant, a corrupt, or a dependent Judiciary.'

"In a very early period of our history, it was said, in words as true to-day as they were then, that 'if they (the people) value and wish to preserve their Constitution, they ought never to surrender the independence of their judges.' Rawle on the Constitution (2d Ed.) 281."

O'Donoghue v. U. S., 289 U. S. 516, 53 S. Ct. 740, 743, 77 L. Ed. 1356, decided May 29, 1933.

While the limitation upon the power of the Legislature to diminish the salary, compensation, or fees of those officers mentioned in sections 118 and 281 of the Constitution is the same as that fixed by section 150, yet the latter is more pronounced since its springs from the greater necessity. For the purposes of this opinion, and since the Legislature in the Lapsley-Lusk Act placed the officers protected by these three provisions in the same class, we will treat them as a unit. What then do we find in the Lapsley-Lusk Act? The Legislature, dealing with those officers protected by sections 150, 118, and 281, separately from those officers and employees not so protected. As to the latter, the act is to become effective on the first day of the month after the approval of the act; as to the former, the act is to become effective only after a constitutional amendment, removing or suspending

sections 150, 118, and 281 and similar provisions, is adopted by the people. The former class is independent of the latter class because the Legislature contemplated by the act that salaries or compensation of the latter are to be reduced on a day long prior to the date of the election on the Sparks Amendment, and regardless of whether the people adopted said amendment, or a similar one. What would have been the result had the Sparks Amendment lost in the election? The salaries of the former class would not have been affected, and as to them the Lapsley-Lusk Act would have remained dormant, awaiting the adoption of a similar amendment by the people. But what of those officers and employees not protected by sections 150 and 281 and similar provisions? The answer is that their salaries or compensation would continue in their diminished state, uncontrolled or undisturbed by the failure of the people to adopt the Sparks Amendment. The Legislature so intended. The result is, therefore, that two subjects, distinct from and independent of each other, one with the cloak of the Constitution thrown about it, the other naked and without protection, have been dealt with by the Legislature in the same act. Those elements that compose and protect one are lacking in the other. The Legislature recognizes the difference in their substance, and the act treats them differently in its execution; the one is to live, although the other may die in birth. They are two distinct and independent subjects, especially made so by the method of treatment accorded them in the Lapsley-Lusk Act. Neither is germane nor cognate to the other, nor a complement thereof; nor is one germane or cognate to the title. Eliminate either from the act and the other remains a distinct and complete subject of legislative enactment.

My position is identical to that of Mr. Justice Stone in Ballentyne v. Wickersham, 75 Ala. 541, when he said: "We do not affirm, in what is said above, that a title could not be framed, general enough and broad enough to embrace the whole scope of the act.—Rogers v. Torbut, 58 Ala. 523. All we decide is, that the legislature chose to express a minor subject, which was not broad enough to cover the entire contents of the act, and hence, they felt called upon to express two minor subjects."

For instance, the Bonner Act (Gen. Acts 1932 [Ex. Sess.] p. 300) most probably meets the requirements of section 45, but it is materially different from the act in question.

The suggestion is further made that the Sparks Amendment (Gen. Acts 1933 [Ex. Sess.] p. 46), by its language, not only relieves the Lapsley-Lusk Act from the inhibitions of sections 118, 150, and 281 of the Constitution, but that it likewise cures any infirmities resulting from the act's failure to comply with section 45 of the Constitution. The language referred to in the Sparks Amendment is as follows: "Any other Act of the Legislature adopted prior to October 1, 1935 decreasing or diminishing the salary, fees or compensation of any such officer or officers, during the term for which such officer or officers may have been elected or appointed, shall be effective from and after the first day of the month next succeeding the date of the ratification and adoption of this amendment, or from and after the adoption by the Legislature of any such Act decreasing or diminishing the salary, fees or compensation of such officer or officers." Section 1.

To this contention I cannot agree. The word "adopted" necessarily means "validly adopted," and if the Lapsley-Lusk Act was not validly adopted, of course the Sparks Amendment would have no application. If appellants' contention be true, the Legislature could meet in another session before October 1, 1935, pass a similar act violative of sections 45, 61, and 64 of the Constitution and other procedural constitutional provisions, and rest upon the assumption that the Sparks Amendment validated the statute. The language of the Sparks Amendment, by its very terms, leads one to the irresistible conclusion that such was not its intention, but that it was intended to relieve against only sections 118, 150, and 281, and similar provisions of the Constitution. The first sentence of the amendment emphasizes the intent and purpose of the amendment as follows: "All provisions of the Constitution which prohibit or restrict the Legislature from decreasing or diminishing the salary, fees or compensation of any executive, legislative or judicial officer or of any public officer or of any officer holding any civil office of profit under this State or any County or Municipality thereof, whether elected or appointed, during the term for which he shall have been elected or appointed are hereby suspended until October 1, 1935." Section 1. This language indicates clearly that the amendment was not intended to relieve such statutes from compliance with other provisions of the Constitution, such as sections 45, 61, and 64.

It is my opinion, therefore, that the judgment of the learned court below should be affirmed.

I therefore respectfully dissent.